NO. 06-40308

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

RONALD E DUFF,
Plaintiff-Appellee,

v.

WERNER ENTERPRISES, INC.,
doing business as Nebraska Werner Enterprises, Inc.;
GLEN PATRICK PEER
Defendants-Appellants,

*Appeal from the United States District Court
For the Eastern District of Texas*

---

## RECORD EXCERPTS OF BRIEF FOR APPELLANTS

---

M. David Frock
State Bar No. 07484800
Frock and Broussard, P.C.
2550 North Loop West
Suite 260
Houston, Texas 77092-8908
Telephone: (713) 688-2300
Fax: (713) 688-2377

ATTORNEY FOR APPELLANTS

# RECORD EXCERPTS

## Contents

| | | Document Number | Record Cite |
|---|---|---|---|
| 1. | Docket Sheet | 1-126 | USCA5 1-15 |
| 2. | Jury Verdict | 106 | USCA5 636-637 |
| 3. | Motion for Judgment as a Matter of Law | 110 | USCA5 645-668 |
| 4. | Order Denying Motion for Judgment as a Matter of Law | 111 | USCA5 661 |
| 5. | Motion for New Trial | 113 | USCA5 664-677 |
| 6. | Order Denying Motion for New Trial | 114 | USCA5 680 |
| 7. | Final Judgment | 112 | USCA5 662 |
| 8. | Notice of Appeal | 116 | USCA5 723 |

9. Pertinent statutes:
    a.    TEX. CIV. P. REM. CODE § 33.001
    b.    TEX. CIV. P. REM. CODE § 33.003
    c.    TEX. CIV. P. REM. CODE § 33.012
    d.    TEX. TRANSPORTATION CODE § 546.001
    e.    TEX. TRANSPORTATION CODE § 546.002
    f.    TEX. TRANSPORTATION CODE § 546.003
    g.    TEX. TRANSPORTATION CODE § 546.004
    h.    TEX. TRANSPORTATION CODE § 546.005

10. Trial Testimony of Trooper Rae Shel Lee     R-121,130-132, 137, 143, 157-159

11. Trial Testimony of Dr. Vivek Kushwaha     R-54, 77

MEDIATION, JURY, APPEAL

### U.S. District Court [LIVE]
### Eastern District of TEXAS LIVE (Lufkin)
### CIVIL DOCKET FOR CASE #: 9:05-cv-00181-TH

Duff v. Werner Enterprises Inc et al
Assigned to: Judge Thad Heartfield
Referred to:
Demand: $75000
Lead Docket: None
Related Cases: None
Cases in other court: None
Cause: 28:1332 Diversity-Auto Negligence

Date Filed: 11/1/2004
Jury Demand: Both
Nature of Suit: 350 Motor Vehicle
Jurisdiction: Diversity

USCA - 06 - 40308

**Mediator**
------------------------

**Daniel C Ducote**

V.

**Plaintiff**
------------------------

**Ronald E Duff**                        represented by  **Allen Jack Washburn**
                                                         Murphrey & Washburn
                                                         820 Gessner
                                                         Suite 1560
                                                         Houston, TX 77024
                                                         713/827-0505
                                                         Fax: 17138270560
                                                         Email:
                                                         jwashburn@jackwashburn.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Bryan Adam Terrell**
                                                         Weller Green Toups & Terrell LLP
                                                         2615 Calder
                                                         Suite 400
                                                         Beaumont, TX 77704
                                                         409/838-0101

TRUE COPY I CERTIFY
DAVID J. MALAND, CLERK
U.S. DISTRICT COURT
EASTERN DISTRICT, TEXAS
BY

USCA5 1

Fax: 14098386780
Email: baterrell@wgttlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**
---------------------

Werner Enterprises Inc          represented by   **M David Frock**
                                                 Frock & Broussard
                                                 2550 North Loop West
                                                 Suite 260
                                                 Houston, TX 77092-8908
                                                 713/688-2300
                                                 Fax: 17136882377
                                                 Email: jennifero@pdq.net
                                                 *ATTORNEY TO BE NOTICED*

*dba*
Nebraska Werner enterprises Inc

Glen Patrick Peer               represented by   **M David Frock**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

| Filing Date | # | Docket Text |
|---|---|---|
| 11/1/2004 (p.16) | 1 | COMPLAINT against all defendants (Filing fee $ 150; receipt #108746.) , filed by Ronald E Duff. (Attachments: # (1) Civil Cover Sheet)(aam, ) (Entered: 11/4/2004) |
| 11/1/2004 (p.23) | 2 | Summons Issued as to Werner Enterprises Inc., Glen Patrick & mailed to pla's atty for service (aam, ) (Entered: 11/4/2004) |
| 11/4/2004 | | Magistrate Consent Form Mailed to plaintiff's attys Jack Washburn and B. Terrell (aam, ) (Entered: 11/4/2004) |
| 12/3/2004 (p.27) | 3 | SUMMONS Returned personally executed as to Werner Enterprises Inc served on 11/18/2004, answer due 12/8/2004. (bjc, ) (Entered: 12/3/2004) |

| | | |
|---|---|---|
| 12/3/2004 (p.29) | 4 | *Original* ANSWER to Complaint with Jury Demand *by Peer and* by Werner Enterprises Inc.(Frock, M) (Entered: 12/3/2004) |
| 12/3/2004 | | Mailed consent form to atty M David Frock (bjc, ) (Entered: 12/3/2004) |
| 1/25/2005 (p.33) | 5 | NOTICE of Hearing: Management Conference set for 3/10/2005 10:00 AM in (Beaumont) before Judge Thad Heartfield. (mfr, ) (Entered: 1/25/2005) |
| 3/1/2005 (p.38) | 6 | NOTICE by Ronald E Duff *Disclosure of Interested Persons* (Washburn, Allen) (Entered: 3/1/2005) |
| 3/3/2005 (p.40) | 7 | STATUS REPORT *Rule 26* by Werner Enterprises Inc, Glen Patrick Peer. (Frock, M) (Entered: 3/3/2005) |
| 3/10/2005 (p.45) | 11 | Minute Entry for proceedings held before Judge Thad Heartfield : Scheduling Conference held on 3/21/2005. Court sets deadlines. Jury selection and trial set September 19, 2005. (jmv, ) (Entered: 3/21/2005) |
| 3/15/2005 (p.47) | 8 | SCHEDULING ORDER: Deadline to add parties 4/9/05. Motions for leave to amend pleadings due by 6/8/05. Proposed Jury instructions and verdict form due by 9/5/2005. Mediation Completion due by 7/8/2005. Joint Final Pretrial Order due by 9/5/2005. Dispositive motions filed by 6/8/05. Motions in limine due 9/5/05. Responses to motions in limine due 9/12/05. Signed by Judge Thad Heartfield on 3/15/05. (bjc, ) (Entered: 3/15/2005) |
| 3/18/2005 (p.53) | 9 | NOTICE by Werner Enterprises Inc, Glen Patrick Peer (Frock, M) (Entered: 3/18/2005) |
| 3/18/2005 (p.55) | 10 | ***TWO PLEADING DOC. SEE ALSO DOC# 12.*** First MOTION to Dismiss by Werner Enterprises Inc, Glen Patrick Peer. (Frock, M) Additional attachment(s) added on 3/21/2005 (bjc, ). (Entered: 3/18/2005) |
| 3/23/2005 (p.65) | 12 | ***TWO PLEADING DOC. SEE ALSO DOC# 10.*** First MOTION to Change Venue by Werner Enterprises Inc, Glen Patrick Peer. (Attachments: # (1) Text of Proposed Order to transfer# (2) Text of Proposed Order of dismissal)(Frock, M) Modified on 3/24/2005 (bjc, ). (Entered: 3/23/2005) |

| | | |
|---|---|---|
| 4/1/2005 (p.74) | 13 | RESPONSE to Motion re [10] First MOTION to Dismiss, [12] First MOTION to Change Venue filed by Ronald E Duff. (Attachments: # (1) Text of Proposed Order)(Washburn, Allen) (Entered: 4/1/2005) |
| 4/8/2005 (p.84) | 14 | NOTICE of Disclosure by Ronald E Duff (Washburn, Allen) (Entered: 4/8/2005) |
| 4/8/2005 (p.86) | 15 | NOTICE of Disclosure by Werner Enterprises Inc, Glen Patrick Peer (Frock, M) (Entered: 4/8/2005) |
| 5/2/2005 (p.87) | 16 | NOTICE of Mediation by Ronald E Duff (Washburn, Allen) Modified on 5/3/2005 (tkd, ). (Entered: 5/2/2005) |
| 5/3/2005 (p.89) | 17 | ORDER REFERRING CASE to Mediator Daniel C Ducote. Signed by Judge Thad Heartfield on 5/3/05. (tkd, ) (Entered: 5/4/2005) |
| 6/13/2005 (p.91) | 18 | MOTION to Compel by Ronald E Duff. (Attachments: # (1) Text of Proposed Order # (2) Exhibit # (3) Exhibit)(Washburn, Allen) (Entered: 6/13/2005) |
| 6/22/2005 (p.110) | 19 | NOTICE of Disclosure by Ronald E Duff *First Supplemental Response to Case Specific Disclosure* (Washburn, Allen) (Entered: 6/22/2005) |
| 6/24/2005 (p.112) | 20 | First MOTION for Extension of Time to File *Expert Designation* by Werner Enterprises Inc, Glen Patrick Peer. (Attachments: # (1) Text of Proposed Order order granting motion)(Frock, M) (Entered: 6/24/2005) |
| 6/24/2005 (p.115) | 21 | RESPONSE in Opposition re [18] MOTION to Compel *Discovery* filed by Werner Enterprises Inc. (Attachments: # (1) Exhibit A# (2) Text of Proposed Order Denying Pls Motion)(Frock, M) (Entered: 6/24/2005) |
| 7/7/2005 (p.136) | 22 | REPLY to Response to Motion re [18] MOTION to Compel filed by Ronald E Duff. (Attachments: # (1) Exhibit)(Washburn, Allen) (Entered: 7/7/2005) |
| 7/11/2005 (p.158) | 23 | ORDER granting [20] Motion to extend pla's and dfts' expert designation and entry of amended scheduling order . Signed by Judge Thad Heartfield on 7/11/05. (bjc, ) (Entered: 7/11/2005) |
| 7/11/2005 | 24 | ORDER Setting Hearing on Motion [18] MOTION to Compel: Motion Hearing set for 7/18/2005 02:00 PM in Ctrm 1 (Beaumont) |

| | | |
|---|---|---|
| (p.160) | | before Judge Thad Heartfield.. Signed by Judge Thad Heartfield on 7/11/05. (bjc, ) (Entered: 7/11/2005) |
| 7/14/2005 (p.161) | 25 | ORDERED that the hearing on pla's motion to compel [18] set for 2:00 p.m. on 7/18/05, is hereby cancelled. Signed by Judge Thad Heartfield on 7/14/05. (bjc, ) (Entered: 7/14/2005) |
| 7/14/2005 (p.162) | 26 | MOTION for Leave to File by Ronald E Duff. (Attachments: # (1) Text of Proposed Order Motion to Compel)(Washburn, Allen) (Entered: 7/14/2005) |
| 7/19/2005 (p.167) | 27 | ORDER denying as moot [18] Motion to Compel . Signed by Judge Thad Heartfield on 7/19/05. (bjc, ) (Entered: 7/19/2005) |
| 8/2/2005 (p.168) | 28 | MOTION to Quash by Ronald E Duff. (Attachments: # (1) Text of Proposed Order # (2) Exhibit # (3) Exhibit)(Washburn, Allen) (Entered: 8/2/2005) |
| 8/8/2005 (p.177) | 29 | NOTICE of Disclosure by Ronald E Duff *Expert Testimony* (Washburn, Allen) (Entered: 8/8/2005) |
| 8/10/2005 (p.179) | 30 | NOTICE of Disclosure by Ronald E Duff *FIRST AMENDED RESPONSE* (Washburn, Allen) (Entered: 8/10/2005) |
| 8/18/2005 (p.181) | 31 | NOTICE of Disclosure by Werner Enterprises Inc, Glen Patrick Peer *Supplemental Case Specific* (Frock, M) (Entered: 8/18/2005) |
| 8/18/2005 (p.182) | 32 | NOTICE of Disclosure by Werner Enterprises Inc, Glen Patrick Peer *of Expert Testimony* (Frock, M) (Entered: 8/18/2005) |
| 8/19/2005 (p.184) | 33 | NOTICE of Disclosure by Werner Enterprises Inc, Glen Patrick Peer *Supp Rule 26* (Frock, M) (Entered: 8/19/2005) |
| 8/19/2005 (p.186) | 34 | NOTICE of Disclosure by Ronald E Duff *FIRST AMENDED (INITIAL)* (Washburn, Allen) (Entered: 8/19/2005) |
| 8/19/2005 (p.188) | 35 | Notice of *(Pre-Trial Disclosures)* by Ronald E Duff.. (Washburn, Allen) (Entered: 8/19/2005) |
| 8/22/2005 (p.197) | 36 | Notice of *Pre-Trial Disclosures* by Werner Enterprises Inc, Glen Patrick Peer.. (Frock, M) (Entered: 8/22/2005) |
| 8/22/2005 | | NOTICE of Hearing: Docket Call set for 9/19/2005 09:00 AM in Ctrm 1 (Beaumont) before Judge Thad Heartfield. Jury Selection set for |

| | | |
|---|---|---|
| (p.201) | 37 | 9/20/2005 09:00 AM in Ctrm 1 (Beaumont) before Judge Thad Heartfield. (mfr, ) (Entered: 8/22/2005) |
| 8/23/2005 (p.206) | 38 | NOTICE by Ronald E Duff (Washburn, Allen) (Entered: 8/23/2005) |
| 8/29/2005 (p.209) | 39 | NOTICE by Werner Enterprises Inc, Glen Patrick Peer *1st Amended Designation of Experts* (Frock, M) (Entered: 8/29/2005) |
| 8/29/2005 (p.215) | 40 | NOTICE of Disclosure by Werner Enterprises Inc, Glen Patrick Peer *1st Amended Pre-Trial* (Frock, M) (Entered: 8/29/2005) |
| 8/30/2005 (p.219) | 41 | ORDER granting [28] Motion to Quash subpoena Duces Tecum. Signed by Judge Thad Heartfield on 8/30/05. (bjc, ) (Entered: 8/31/2005) |
| 8/30/2005 (p.220) | 42 | ORDERED that dft's [10] Motion to Dismiss or in the alternative [12] Motion to Change Venue is partially granted. Ordered that pursuant to 28 USC 1406(a) this action is transferred to the Lufkin Division. Ordered that the motion to dismiss is denied. Ordered that this action is reset to the 10/4/05 Lufkin trial docket . Signed by Judge Thad Heartfield on 8/30/05. (bjc, ) (Entered: 8/31/2005) |
| 8/31/2005 | | Case transferred in from Beaumont Division. Case Number 1:04cv687. Case assigned to Judge Thad Heartfield., filed by Ronald E Duff.(djh, ) (Entered: 8/31/2005) |
| 8/31/2005 | | Case assigned to Judge Thad Heartfield. (djh, ) (Entered: 8/31/2005) |
| 9/6/2005 (p.221) | 43 | RESPONSE in Opposition re [12] First MOTION to Change Venue *to Plaintiff's Mtn to Reconsider* filed by Werner Enterprises Inc, Glen Patrick Peer. (Frock, M) (Entered: 9/6/2005) |
| 9/6/2005 (p.225) | 44 | Proposed Pretrial Order by Ronald E Duff, Werner Enterprises Inc, Glen Patrick Peer. (Attachments: # (1) Exhibit Plaintiffs Exhibit List# (2) Exhibit Plaintiff's Witness List# (3) Exhibit Defendant's Witness List# (4) Exhibit Defendant's Exhibit List)(Frock, M) (Entered: 9/6/2005) |
| 9/6/2005 (p.240) | 45 | NOTICE of Hearing: Docket Call set for 10/4/2005 10:00 AM in Ctrm 102 (Lufkin) before Judge Thad Heartfield. Jury Selection set for 10/4/2005 01:00 PM in Ctrm 102 (Lufkin) before Judge Thad Heartfield. (mfr, ) (Entered: 9/6/2005) |

| | | |
|---|---|---|
| 9/6/2005 (p.242) | 46 | **Document deficient (no certificate of service). Please ignore. (Replaced by document [48].)** - MOTION in Limine by Ronald E Duff. (Attachments: # (1) Text of Proposed Order)(Washburn, Allen) Modified on 9/7/2005 (kjr, ). (Entered: 9/6/2005) |
| 9/6/2005 (p.248) | 47 | Proposed Jury Instructions by Ronald E Duff. (Washburn, Allen) (Entered: 9/6/2005) |
| 9/7/2005 | | NOTICE of Deficiency (no certificate of service) regarding the [46] Motion in Limine submitted by Ronald E Duff. Document to be resubmitted. (kjr, ) (Entered: 9/7/2005) |
| 9/7/2005 (p.260) | 48 | MOTION in Limine *(Refile With Cert. of Service)* by Ronald E Duff. (Attachments: # (1) Text of Proposed Order)(Washburn, Allen) (Entered: 9/7/2005) |
| 9/8/2005 (p.266) | 49 | MOTION for Protective Order by Werner Enterprises Inc, Glen Patrick Peer. (Frock, M) (Entered: 9/8/2005) |
| 9/8/2005 (p.271) | 50 | MOTION to Quash *Subpoena: Maxwell* by Ronald E Duff. (Attachments: # (1) Exhibit # (2) Text of Proposed Order)(Washburn, Allen) (Entered: 9/8/2005) |
| 9/8/2005 (p.278) | 51 | ORDER Setting Hearing on [43] Motion to Reconsider Transfer of Venue. Motion Hearing set for 9/29/2005 03:30 PM in Ctrm 1 (Beaumont) before Judge Thad Heartfield. Signed by Judge Thad Heartfield on 9/8/05. (kjr, ) (Entered: 9/8/2005) |
| 9/10/2005 (p.279) | 52 | RESPONSE in Opposition re [49] MOTION for Protective Order filed by Ronald E Duff. (Attachments: # (1) Text of Proposed Order) (Washburn, Allen) (Entered: 9/10/2005) |
| 9/12/2005 (p.285) | 53 | NOTICE by Ronald E Duff *Objection to Depositions/Exhibits* (Attachments: # (1) Text of Proposed Order)(Washburn, Allen) (Entered: 9/12/2005) |
| 9/12/2005 (p.289) | 54 | RESPONSE to [44] Proposed Pretrial Order, *Objections to Plaintiff's Offers of Deposition Testimony* by Werner Enterprises Inc. (Frock, M) (Entered: 9/12/2005) |
| 9/12/2005 (p.292) | 55 | RESPONSE to [44] Proposed Pretrial Order, *Defendants' Notice of Objections to Plaintiff's Trial Exhibits* by Werner Enterprises Inc. (Frock, M) (Entered: 9/12/2005) |
| | | |

| | | |
|---|---|---|
| 9/20/2005 (p.298) | 56 | **Document deficient (no signature). Please ignore.** -REPLY to Response to Motion re [49] MOTION for Protective Order *Defendants' Reply to Plaintiff's Response* filed by Werner Enterprises Inc. (Frock, M) Modified on 9/20/2005 (kjr, ). (Entered: 9/20/2005) |
| 9/20/2005 (p.301) | 57 | **Document deficient (no signature). Please ignore.** - REPLY to Response to Motion re [49] MOTION for Protective Order *Defendants' Reply to Plaintiff's Response* filed by Werner Enterprises Inc. (Attachments: # (1) Exhibit A)(Frock, M) Modified on 9/20/2005 (kjr, ). (Entered: 9/20/2005) |
| 9/20/2005 | | NOTICE of Deficiency regarding the [56] and [57] Reply to Response to Motion for Protective Order (no signature) submitted by Werner Enterprises Inc, Glen Patrick Peer. Document to be refiled.(kjr, ) (Entered: 9/20/2005) |
| 9/20/2005 (p.306) | 58 | REPLY to Response to Motion re [49] MOTION for Protective Order *Defendants' Reply to Plaintiff's* filed by Werner Enterprises Inc. (Attachments: # (1) Exhibit Letter)(Frock, M) (Entered: 9/20/2005) |
| 9/21/2005 (p.311) | 59 | NOTICE of Disclosure by Ronald E Duff *Case Specific: First Supplement to First Amended* (Washburn, Allen) (Entered: 9/21/2005) |
| 9/21/2005 (p.313) | 60 | NOTICE of Disclosure by Ronald E Duff *Initial (Rule 26) First Supplement to First Amended* (Washburn, Allen) (Entered: 9/21/2005) |
| 9/21/2005 (p.315) | 61 | Exhibit List *Supplemental to Pre-Trial Order* by Ronald E Duff.. (Attachments: # (1) Exhibit)(Washburn, Allen) (Entered: 9/21/2005) |
| 10/4/2005 (p.318) | 62 | ORDER CONTINUING TRIAL SETTING. As a result of the disruption in court business occasioned by Hurricane Rita, the court *sua sponte* continues this action to the 12/5/05 trial docket in Lufkin TX. Signed by Judge Thad Heartfield on 10/4/05. (kjr, ) (Entered: 10/5/2005) |
| 10/13/2005 (p.319) | 63 | Exhibit List *First Supplemental Exhibit List* by Werner Enterprises Inc.. (Attachments: # (1))(Frock, M) (Entered: 10/13/2005) |
| 10/13/2005 (p.323) | 64 | Witness List by Werner Enterprises Inc. (Attachments: # (1))(Frock, M) (Entered: 10/13/2005) |
| 10/13/2005 (p.330) | 65 | NOTICE of Disclosure by Werner Enterprises Inc *2nd Amended Pre-Trial Disclosures* (Frock, M) (Entered: 10/13/2005) |
| | | |

USCA5 8

4/20/2006

)                                    )

| | | |
|---|---|---|
| 10/14/2005<br>(p.334) | 66 | **\*\*PLEASE IGNORE. Document is duplicate of Document # 65.\*\***<br>NOTICE of Disclosure by Werner Enterprises Inc, Glen Patrick Peer<br>*2nd Amended Pre-Trial Disclosures* (Frock, M) Modified on<br>10/14/2005 (kjr, ). (Entered: 10/14/2005) |
| 10/14/2005<br>(p.338) | 67 | NOTICE of Disclosure by Werner Enterprises Inc, Glen Patrick Peer<br>*First Supplemental Case Specific Disclosures* (Frock, M) (Entered:<br>10/14/2005) |
| 10/14/2005 | | **\*\*\*FILED IN ERROR. Document # 66 Notice of 2nd Amended<br>Pretrial Disclosures. PLEASE IGNORE. THE DOCUMENT IS A<br>DUPLICATE OF DOCUMENT # 65. ALSO PLEASE NOTE<br>DISCLOSURE IS NOT FILED -- ONLY FILE NOTICE OF<br>DISCLOSURE\*\*\*** (kjr, ) (Entered: 10/14/2005) |
| 10/28/2005<br>(p.350) | 68 | NOTICE of Hearing: Docket Call set for 12/5/2005 10:30 AM in Ctrm<br>102 (Lufkin) before Judge Thad Heartfield. Jury Selection set for<br>12/5/2005 01:00 PM in Ctrm 102 (Lufkin) before Judge Thad<br>Heartfield. (mfr, ) (Entered: 10/28/2005) |
| 11/10/2005<br>(p.352) | 69 | Witness List by Werner Enterprises Inc, Glen Patrick Peer.<br>(Attachments: # (1))(Frock, M) (Entered: 11/10/2005) |
| 11/14/2005<br>(p.358) | 70 | ORDER REFERRING CASE to Mediator Dan Ducote for a second<br>mediation to be convened prior to 11/28/05 . Signed by Judge Thad<br>Heartfield on 11/14/05. (kjr, ) (Entered: 11/14/2005) |
| 11/16/2005<br>(p.359) | 71 | Exhibit List *Motion to Exclude Trial Exhibit* by Werner Enterprises<br>Inc, Glen Patrick Peer.. (Attachments: # (1) # (2))(Frock, M) (Entered:<br>11/16/2005) |
| 11/16/2005<br>(p.380) | 72 | Additional Attachments to Main Document: [71] Exhibit List.. (Frock,<br>M) (Entered: 11/16/2005) |
| 11/18/2005<br>(p.383) | 73 | Exhibit List by Werner Enterprises Inc, Glen Patrick Peer.. (Frock, M)<br>(Entered: 11/18/2005) |
| 11/18/2005<br>(p.385) | 74 | Witness List by Werner Enterprises Inc, Glen Patrick Peer. (Frock, M)<br>(Entered: 11/18/2005) |
| 11/21/2005<br>(p.389) | 75 | Exhibit List *Amended* by Werner Enterprises Inc, Glen Patrick Peer..<br>(Frock, M) (Entered: 11/21/2005) |
| 11/21/2005 | 76 | NOTICE by Werner Enterprises Inc, Glen Patrick Peer *of Objections* |

)                                                )

| | | |
|---|---|---|
| (p.391) | | *to Plaintiff's Trial Exhibits* (Frock, M) (Entered: 11/21/2005) |
| 11/21/2005 (p.397) | 77 | NOTICE by Werner Enterprises Inc, Glen Patrick Peer *Defendants Objections to Plaintiff's Offers of Deposition Testimony* (Frock, M) (Entered: 11/21/2005) |
| 11/21/2005 (p.400) | 78 | NOTICE by Ronald E Duff *FIRST AMENDED OBJECTIONS TO DEFENDANTS' USE OF DEPOSITIONS AND EXHIBITS* (Attachments: # (1) Text of Proposed Order)(Washburn, Allen) (Entered: 11/21/2005) |
| 11/21/2005 (p.404) | 79 | **\*\*Document deficient (no certificate of conference and was submitted as a notice rather than a motion). Document to be resubmitted. Please ignore.\*\*** NOTICE by Werner Enterprises Inc, Glen Patrick Peer *Motion to Exclude Kenneth Musick and David Maxwell as Expert Witnesses for the Plaintiff* (Attachments: # (1) # (2))(Frock, M) Modified on 11/22/2005 (kjr, ). (Entered: 11/21/2005) |
| 11/21/2005 | | **NOTICE** of Deficiency regarding the [79] Motion to Exclude Kenneth Musick and David Maxwell as Expert Witnesses. Document does not have certificate of conference and was submitted as a notice rather than a motion. Document is to be refiled. (kjr, ) (Entered: 11/22/2005) |
| 11/22/2005 (p.425) | 80, | MOTION Motion to Exlude Kenneth Musick and David Maxwell as Experts *for the Plaintiff* by Werner Enterprises Inc, Glen Patrick Peer. (Attachments: # (1) # (2) # (3))(Frock, M) (Entered: 11/22/2005) |
| 11/22/2005 (p.454) | 81 | ORDER denying as moot [50] Motion to Quash . Signed by Judge Thad Heartfield on 11/22/05. (kjr, ) (Entered: 11/22/2005) |
| 11/22/2005 (p.455) | 82 | ORDER denying as moot [49] Motion for Protective Order . Signed by Judge Thad Heartfield on 11/22/05. (kjr, ) (Entered: 11/22/2005) |
| 11/22/2005 (p.456) | 83 | ORDER denying [80] Motion to Exclude Kenneth Musick and David Maxwell as Expert Witnesses as untimely filed. Signed by Judge Thad Heartfield on 11/22/05. (kjr, ) (Entered: 11/22/2005) |
| 11/22/2005 (p.457) | 84 | Proposed Pretrial Order *Joint* by Werner Enterprises Inc, Glen Patrick Peer. (Attachments: # (1) # (2) # (3) # (4) # (5))(Frock, M) (Entered: 11/22/2005) |
| | | |

| | | |
|---|---|---|
| 11/23/2005 (p.476) | 85 | Proposed Pretrial Order by Werner Enterprises Inc. (Frock, M) (Entered: 11/23/2005) |
| 11/23/2005 (p.482) | 86 | Witness List by Ronald E Duff. (Frock, M) (Entered: 11/23/2005) |
| 11/25/2005 (p.485) | 87 | Witness List by Werner Enterprises Inc. (Frock, M) (Entered: 11/25/2005) |
| 11/28/2005 (p.491) | 88 | **Document deficient (no signature on certificate of conference/certificate of service). Please ignore.** Exhibit List *Defendant's Response to Plaintiff's Objections to Defendants Exhibits* by Werner Enterprises Inc, Glen Patrick Peer.. (Attachments: # (1)) (Frock, M) Modified on 11/28/2005 (kjr, ). (Entered: 11/28/2005) |
| 11/28/2005 (p.501) | 89 | Proposed Pretrial Order *of Plaintiff and* by Ronald E Duff, Werner Enterprises Inc, Glen Patrick Peer. (Attachments: # (1) # (2) # (3)) (Frock, M) (Entered: 11/28/2005) |
| 11/28/2005 | | NOTICE of Deficiency (no signature on certificate of conference or certificate of service) regarding the [88] Response to Plaintiff's Objections to Defendants' Exhibits submitted by Werner Enterprises Inc, Glen Patrick Peer. Document to be resubmitted as "response to non-motion." (kjr, ) (Entered: 11/28/2005) |
| 11/28/2005 (p.516) | 90 | RESPONSE to [78] Notice (Other) *Plaintiff's Objections to Defendant's Exhibits 24 through 27* by Werner Enterprises Inc, Glen Patrick Peer. (Attachments: # (1))(Frock, M) (Entered: 11/28/2005) |
| 11/28/2005 (p.526) | 91 | MOTION in Limine by Werner Enterprises Inc, Glen Patrick Peer. (Frock, M) (Entered: 11/28/2005) |
| 11/28/2005 (p.540) | 92 | Exhibit List by Werner Enterprises Inc, Glen Patrick Peer.. (Frock, M) (Entered: 11/28/2005) |
| 11/28/2005 (p.542) | 93 | MOTION for Reconsideration re [83] Order on Motion for Miscellaneous Relief by Werner Enterprises Inc, Glen Patrick Peer. (Frock, M) (Entered: 11/28/2005) |
| 11/29/2005 (p.547) | 94 | RESPONSE to [71] Exhibit List *MOTION TO EXCLUDE TRIAL EXHIBIT NO. 2* by Ronald E Duff. (Attachments: # (1) Text of Proposed Order # (2) Exhibit # (3) Exhibit)(Washburn, Allen) (Entered: 11/29/2005) |
| | | |

| 11/29/2005 (p.600) | 95 | ORDER granting [48] Motion in Limine . Signed by Judge Thad Heartfield on 11/29/05. (kjr, ) (Entered: 11/29/2005) |
|---|---|---|
| 11/29/2005 (p.601) | 96 | ORDER denying [91] Motion in Limine as untimely filed. Signed by Judge Thad Heartfield on 11/29/05. (kjr, ) (Entered: 11/29/2005) |
| 12/1/2005 (p.602) | 97 | Exhibit List *Amended* by Werner Enterprises Inc, Glen Patrick Peer.. (Frock, M) (Entered: 12/1/2005) |
| 12/2/2005 (p.604) | 98 | ORDERED that the following trial scheduling deadlines are hereby established: Monday,.12/5/2005 09:00 a.m final pre-trial conference before Judge Thad Heartfield in Lufkin, TX. Monday, 12/5/05 10:30 a.m. voir dire. Tuesday, 12/6/05 9:00 a.m. opending statements. Signed by Judge Thad Heartfield on 12/2/05. (bjc, ) (Entered: 12/2/2005) |
| 12/5/2005 (p.605) | 99 | ORDER ruling on [76] Defendants' Objections to Plaintiff's Trial Exhibits . Signed by Judge Thad Heartfield on 12/5/05. (kjr, ) (Entered: 12/5/2005) |
| 12/5/2005 (p.607) | 100 | ORDER ruling on [78] and [53] Plaintiff's Objections to Defendants' Trial Exhibits . Signed by Judge Thad Heartfield on 12/5/05. (kjr, ) (Entered: 12/5/2005) |
| 12/5/2005 (p.609) | 101 | PRETRIAL ORDER. Signed by Judge Thad Heartfield on 12/5/05. (djh, ) (Entered: 12/8/2005) |
| 12/7/2005 (p.624) | 102 | Trial Witness List (djh, ) (Entered: 12/8/2005) |
| 12/7/2005 (p.625) | 103 | Trial Exhibit List. (djh, ) (Entered: 12/8/2005) |
| 12/7/2005 (p.628) | 104 | Minute Entry for jury trial proceedings held before Judge Thad Heartfield : Jury Trial completed on 12/7/2005. (Court Reporter Frank McMillan.) (djh, ) (Entered: 12/8/2005) |
| 12/7/2005 (p.630) | 105 | Jury Instructions. (djh, ) (Entered: 12/8/2005) |
| 12/7/2005 (p.636) | 106 | JURY VERDICT. (djh, ) (Entered: 12/8/2005) |
| | | Jury Note #1 (djh, ) (Entered: 12/8/2005) |

| | | |
|---|---|---|
| 12/7/2005 | 107 | |
| 12/7/2005 | 108 | Jury Note #2 (djh, ) (Entered: 12/8/2005) |
| 12/28/2005 (p.638) | 109 | MOTION for Judgment on Jury Verdict by Ronald E Duff. (Attachments: # (1) Exhibit A # (2) Proposed Final Judgment) (Washburn, Allen) Modified on 12/28/2005 (tkd, ). (Entered: 12/28/2005) |
| 1/6/2006 (p.645) | 110 | MOTION for New Trial by Werner Enterprises Inc, Glen Patrick Peer. (Frock, M) (Entered: 1/6/2006) |
| 1/10/2006 (p.661) | 111 | ORDER denying [110] Motion for Judgment Notwithstanding the Verdict, or, in the Alternative, for New Trial . Signed by Judge Thad Heartfield on 1/10/06. (kjr, ) (Entered: 1/10/2006) |
| 1/11/2006 (p.662) | 112 | FINAL JUDGMENT in favor of Ronald E. Duff against Werner Enterprises, Inc. and Glen Patrick Peer jointly and severally in the amount of $300,000.00 in damages. Plaintiff shall recover pre-judgment interest on the sum of $77,000 at the annual rate of 5% to be paid from 10/28/04 to the day preceding the date judgment is rendered. Plaintiff shall recover post-judgment interest on the judgment at the rate of 4.3% to be paid from date judgment is rendered until the date it is paid. Plaintiff is entitled to recover costs of court from defendants. To this end, plaintiff is directed to file and serve upon defendants a verified bill of costs. Execution shall issue for this judgment. All relief not expressly granted is denied. Signed by Judge Thad Heartfield on 1/11/06. (kjr, ) (Entered: 1/11/2006) |
| 1/13/2006 (p.664) | 113 | MOTION for New Trial by Werner Enterprises Inc, Glen Patrick Peer. (Frock, M) (Entered: 1/13/2006) |
| 1/17/2006 (p.680) | 114 | ORDER denying [113] Motion for New Trial . Signed by Judge Thad Heartfield on 1/17/06. (kjr, ) (Entered: 1/17/2006) |
| 1/24/2006 (p.681) | 115 | BILL OF COSTS *REQUEST TO ENTER* by Ronald E Duff. (Attachments: # (1) Exhibit BILL OF COSTS# (2) Exhibit BILL OF COSTS ITEMIZATION# (3) Exhibit BILL OF COSTS DOCUMENTATION)(Washburn, Allen) (Entered: 1/24/2006) |
| 2/8/2006 (p.723) | 116 | NOTICE OF APPEAL as to [112] Final Judgment(djh, ) (Entered: 2/8/2006) |
| | | |

| 2/8/2006 | | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re [116] Notice of Appeal (djh, ) (Entered: 2/8/2006) |
|---|---|---|
| 2/8/2006 | | Forwarded transcript order forms to dft's counsel (djh, ) (Entered: 2/8/2006) |
| 2/8/2006 | | USCA Appeal Fees received $ 255 receipt number 9-1-181 re [116] Notice of Appeal (kjr, ) (Entered: 4/11/2006) |
| 2/17/2006 (p.724) | 117 | TRANSCRIPT REQUEST by Werner Enterprises Inc, Glen Patrick Peer re [116] Notice of Appeal for dates of 12/5/05 Pre-trial matter jury panel instruction, 12/6/05 jury trial, 12/7/05, trial through verdict (kjr, ) (Entered: 2/17/2006) |
| 3/17/2006 (p.725) | 118 | MOTION for Leave to File *Appeal Bond* by Werner Enterprises Inc. (Attachments: # (1))(Frock, M) (Entered: 3/17/2006) |
| 3/17/2006 (p.732) | 119 | NOTICE of Attorney Appearance by M David Frock on behalf of all defendants (Frock, M) (Entered: 3/17/2006) |
| 4/7/2006 (p.733) | 120 | NOTICE of Docketing Record on Appeal from USCA re [116] Notice of Appeal. USCA Case Number 06-40308 (djh, ) (Entered: 4/7/2006) |
| 4/7/2006 | 121 | TRANSCRIPT filed for 12/5/05 Pre-Trial Objections Hearing before Judge Thad Heartfield, re [116] Notice of Appeal. Court Reporter: Frank McMillan (17 pages). (kjr, ) (Entered: 4/11/2006) |
| 4/7/2006 | 122 | TRANSCRIPT filed for 12/5/05 Preliminary Jury Instructions before Judge Thad Heartfield, re [116] Notice of Appeal. Court Reporter: Frank McMillan (7 pages). (kjr, ) (Entered: 4/11/2006) |
| 4/7/2006 | 123 | TRANSCRIPT filed for 12/6/05 Trial (Day One) before Judge Thad Heartfield, re [116] Notice of Appeal. Court Reporter: Frank McMillan (pages 1-249). (kjr, ) (Entered: 4/11/2006) |
| 4/7/2006 | 124 | TRANSCRIPT filed for 12/7/05 Trial (Day Two) before Judge Thad Heartfield, re [116] Notice of Appeal. Court Reporter: Frank McMillan (pages 250-445). (kjr, ) (Entered: 4/11/2006) |
| 4/11/2006 | | Forwarded original appeal bond to Judge Heartfield's office for approval (kjr, ) (Entered: 4/11/2006) |
| | | ORDER granting [118] Motion for Leave to File Appeal Bond. Upon the filing of an appeal bond in the amount of $312,000 with an |

| | | |
|---|---|---|
| 4/12/2006 (p.734) | 125 | approved surety company, all proceedings to enforce the judgment in this casue shall be stayed, pending dispositon of defendants' appeal to the United States Court of Appeals for the Fifth Circuit. Signed by Judge Thad Heartfield on 4/12/06. (kjr, ) (Entered: 4/12/2006) |
| 4/13/2006 (p.735) | 126 | Appeal BOND in the amount of $ 312,000.00 posted by Werner Enterprises Inc, Glen Patrick Peer (kjr, ) (Entered: 4/13/2006) |



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

| | | |
|---|---|---|
| RONALD E. DUFF, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:05CV181 (TH) |
| | § | JURY |
| WERNER ENTERPRISES, INC. and | § | |
| GLEN PATRICK PEER, | § | |
| | § | |
| *Defendants.* | § | |

## VERDICT FORM

### Question 1

Did the negligence, if any, of those named below proximately cause the occurrence in question?
Answer "yes" or "no" for each of the following:

a.   Glen Peer     *yes*
b.   Ronald Duff   *no*

*If you answered "yes" to both subparts of Question 1, then answer Question 2.*
*Otherwise do not answer Question 2.*

### Question 2

What percentage of the negligence that caused the occurrence in question do you find to be
attributable to each of those found by you, in your answer to Question 1, to have been negligent?
The percentages you find must total 100 percent.

a.   Glen Peer     _____
b.   Ronald Duff   _____
     Total     100%

USCA5 636

*Answer Question 3 if you answered "yes" to Question1 with respect to Glen Peer and:*
*you answered "no" to Question 1 with respect to Ronald Duff*
*or*
*you assigned a percentage of 50% or less to Ronald Duff in response to Question 2.*
*Otherwise, do not answer Question 3.*

| Question 3 |

What sum of money, if paid now in cash, would fairly and reasonably compensate Ronald Duff
for his injuries, if any, that resulted from the occurrence in question?
Answer in dollars and cents for the following measures of damages, if any:

a.   Physical pain and mental anguish sustained in the past:                                          50,000

b.   Physical pain and mental anguish that, in reasonable probability, Ronald Duff will sustain in the future:   100,000

c.   Loss of earning capacity sustained in the past:                                                  14,000

d.   Loss of earning capacity that, in reasonable probability, Ronald Duff will sustain in the future:   35,000

e.   Disfigurement sustained in the past:                                                             —0—

f.   Disfigurement that, in reasonable probability, Ronald Duff will sustain in the future:            —0—

g.   Physical impairment sustained in the past:                                                       —0—

h.   Physical impairment that, in reasonable probability, Ronald Duff will sustain in the future:      8,000

i.   Medical care in the past:                                                                        13,000

j.   Medical care that, in reasonable probability, Ronald Duff will incur in the future:               80,000

*Sign and date this verdict form and let the courtroom security officer know that you have reached a verdict.*

December 7, 2005
Date

NC
Jury foreperson

-2-

USCA5 637

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### LUFKIN DIVISION

| | | |
|---|---|---|
| RONALD E. DUFF | § | |
| Plaintiff | § | |
| | § | |
| VERSUS | § | CIVIL ACTION NO. 9:05CV181 |
| | § | |
| GLEN PATRICK PEER AND WERNER | § | |
| ENTERPRISES, INC DOING | § | |
| BUSINESS AS NEBRASKA | § | |
| WERNER ENTERPRISES, INC. | § | |

## *MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL OF DEFENDANTS, WERNER ENTERPRISES, INC. AND GLEN PATRICK PEER*

TO THE HONORABLE UNITED STATES DISTRICT COURT:

DEFENDANTS, WERNER ENTERPRISES, INC. (Werner) and GLEN PATRICK PEER (Peer) present this Motion for Judgment Notwithstanding the Verdict or, In the Alternative, Motion for New Trial pursuant to Fed. R. Civ. P. 50 and 59, as follows:

1.      On or about December 7, 2005 the jury in the above referenced cause entered a verdict finding that the negligence of Defendant, Peer was the proximate cause of the accident in question, but that Plaintiff, Ronald Duff was not negligent. The jury's verdict also awarded Plaintiff $35,000.00 for loss of future earning capacity and $80,000.00 for future medical expenses. Defendants contend that the jury verdict finding that Ronald Duff was not negligent, but that Defendant, Glen Patrick Peer was negligent and the jury's award of $35,000.00 for loss of future earning capacity and $80,000.00 for future medical expenses, was not based upon legally sufficient evidence, and that reasonable jurors could not have reached such a verdict. Therefore, the jury's verdict should be vacated and set aside based upon Fed. R. Civ. P. 50. See, **Lyrick Studios, Inc.**

1

vs. Big Idea Productions, Inc., 420 F.3d. 388 (5th Cir. 2005); Arsement vs. Spinnaker Exploration Company, LLC., 400 F.3d. 238 (5th Cir. 2005).

2.     In the alternative, Defendants pray that the court grant a new trial pursuant to Fed. R. Civ. P. 59, for the following reasons.

3.     Under Rule 59, Fed. R. Civ. P., a trial court has broad power to grant a new trial and set aside a jury verdict. Smith vs. Transworld Drilling Company, 773 F.2d. 610 (5th Cir. 1985). The trial court can grant a new trial for a number of traditionally recognized reasons. A new trial can be granted if the court finds that the verdict is against the weight of the evidence. Carr vs. Wal-Mart Stores, Inc., 312 F.3d 667 (5th Cir. 2002); Eyre vs. McDonough Power Equipment, Inc., 755 Fd. 2d 416 (5th Cir. 1985); Conway vs. Chemical Leaman Tank Lines, Inc., 610 F. 2d. 360 (5th Cir. 1980). A court can also grant a new trial if the damages awarded by the jury are excessive, the trial is unfair, or prejudicial error was committed during the trial. Winger vs. Winger, 82 F.3d 160 (7th Cir. 1996); Westbrook vs. General Tire and Rubber Company, 754 F.2d. 1233 (5th Cir. 1985); Carson vs. Polley, 689 F. 2d. 562 (5th Cir. 1982); Martinez vs. Food City, Inc., 658 F.2d. 369 (5th Cir. 1981); Hand vs. United States, 441 F.2d. 529 (5th Cir. 1971); Reed Brothers, Inc. vs. Monsano Company, 525 F.2d. 486 (8th Cir. 1975) cert. denied, 423 U.S. 1055 (1976).

4.     When a court grants a new trial on the basis that the verdict is contrary to the weight of the evidence, the court need not view the evidence in a light most favorable to the non-moving party or the jury's verdict. The court has the power to weigh the evidence and grant a new trial even if there is substantial evidence to support the verdict. Crane vs. Consolidated Rail Corporation, 1983 U.S. Dist. LEXIS 19735 (SD. NY 1984).

5.     In this case, it is clear that the jury's verdict was against the clear weight of the

2

evidence and should be set aside and a new trial ordered. In answer to Question #1, the jury found that the accident was caused by the negligence of Defendant, Peer, but that Plaintiff, Ronald Duff was not negligent. The jury's answer to Question #1, that Plaintiff was not negligent and that Defendant, Peer was negligent, was against the weight of the evidence in this case.

6.     This accident occurred when a commercial motor vehicle being operated by Defendant, Peer was in the process of making a left turn onto US Hwy 59 South near Livingston, Texas. Mr. Peer was pulling from a truck stop that was part of an area that included two gas stations, a parking lot for tractor/trailers, a convenience store and a restaurant along with five highway cross-overs and five driveways. It was an area of heavy traffic with vehicles frequently pulling in and out of the parking lots, gas stations, convenient store and restaurant, and also frequently using the cross-overs to change from one side of US Hwy 59 to another. The accident occurred about 7:00 p.m., but was in an area with good artificial lighting. It was also undisputed that Mr. Peer's truck was lighted and had reflective tape on the sides as required by federal regulations. It is clear that Plaintiff was operating an unmarked car, without any flashing lights or siren and was traveling at speeds of 93 to 100 mph prior to making application of his brakes. It is also undisputed that the maximum posted safe speed at the area where the accident occurred was 65 mph. It was also admitted by the Plaintiff that he was talking on his cell phone immediately prior to seeing Defendant's vehicle. Therefore, it is clear that Plaintiff's operation of his vehicle was greatly in excess of the lawful speed limit and under the conditions existing at the time of the accident, constituted a clear failure to act in a reasonable and prudent manner that was at least a proximate cause of the collision with Defendant's vehicle. Thus, the jury's answer of "no" with respect to Plaintiff in response to Question #1 and finding that Defendant, Peer was negligent, was against the weight of the evidence in this case and should be set aside.

3

7.     However, even more compelling evidence of Plaintiff's negligence was provided by Plaintiff's sole liability expert, Trooper Rae Shel Lee. Trooper Lee was the officer from the Department of Public Safety who investigated this accident and wrote the official DPS accident report. She testified that Plaintiff's speed of 93 to 100 mph in the area where the accident occurred was a violation of the speed limit, was excessive and was unsafe. She also testified that Plaintiff's excessive speed was one of the causes of the accident. Trooper Lee also stated that even if the Plaintiff was operating his vehicle under emergency conditions, his admitted speed of 93 to 100 mph was unsafe and unreasonable in the area where the accident occurred, because it was an area of heavy traffic and frequent accidents and he was not using flashers or a siren. The fact that this evidence, which was so highly critical of the Plaintiff, came from the investigating DPS Trooper and expert called by the Plaintiff, gives it particular weight and importance in this case. Moreover, the testimony of Trooper Lee was uncontradicted by any other witness.

8.     Trooper Lee's testimony was also consistent with the evidence provided by Defendant's accident reconstruction expert, Robert Swint. Mr. Swint, using the measurements made by Trooper Lee at the accident scene, reconstructed the accident and reached some opinions based on the data provided by the electronic control module in Plaintiff's vehicle that had been downloaded by the DPS. Based on this information, Mr. Swint was able to determine that Mr. Peer began his movement across US Hwy 59 North, in order to turn left, at least 8 seconds before the impact. At that time, based on Plaintiff's admitted speed, Plaintiff would have been approximately 1300 feet from the point of impact, a distance of over 4 football fields. Based on calculations for perception and reaction time and recognized stopping distances, Plaintiff had more than enough time to reduce the speed of his vehicle and avoid the accident. Therefore, Mr. Swint concluded that the accident was caused by the combination of Plaintiff's excessive speed, his failure to be attentive

4

and maintain a proper lookout and to make a timely application of his brakes. In fact, the data from the ECM module in Plaintiff's vehicle clearly indicates that he delayed making a full application of his brakes until 3 seconds before the impact, which shows inattention, distraction and a failure to properly perceive Defendant's vehicle, which had already entered the intersection to complete its turn.

9.    Therefore, the evidence was actually overwhelming and conclusive that Plaintiff was traveling at an excessive and unsafe speed at the time of the accident and was distracted, inattentive and failed to make a timely application of his brakes, all of which were a contributing cause of the accident. Therefore, the jury's conclusion that the Plaintiff was not negligent and that Defendant, Peer was negligent in causing the accident, was completely contrary to the evidence and against the weight of the evidence and should be vacated and set aside in this case.

10.    There is ample precedent for granting a new trial where the jury has failed to make a finding of negligence against a party that is against the weight of the evidence. In **Cates vs. Creamer, 2005 U.S. App. LEXIS 25602 (5th Cir. 2005)**, the Court of Appeals affirmed the granting of a new trial where the jury failed to find a motorist negligent who fell asleep at the wheel. The Fifth Circuit indicated that it frequently affirms the granting of Motions for New Trial on evidentiary grounds alone. In another opinion, **Simco vs. Ellis, 303 F.3d. 929 (8th Cir. 2002)** the appellate court affirmed the trial court's granting of a Motion for New Trial, finding that a jury's failure to conclude that a motorist was negligent was against the weight of the evidence. In that case, the motorist in question was traveling above the recommended speed limit. The trial court concluded and the appellate court agreed that the jury's failure to find the motorist who was speeding negligent, was against the weight of the evidence and should be overturned. Similar results were reached in, **Hairston vs. Long Island Railroad Company,**

5

2003 U.S. Dist. LEXIS 9015 (SD, NY) 2003; and **Crane vs. Consolidated Rail Corporation,** supra.

12.     Therefore, it is clear that the jury's failure to find that Plaintiff, Ronald Duff was negligent in answer to Question #1 should be vacated because it was contrary to the weight of the evidence in this case. The conclusion that Mr. Duff's negligence was a contributing cause of the accident was strongly supported in the evidence. Moreover, there is extensive support for overturning a jury's finding that a party was not negligent through a Motion for New Trial, under circumstances where it is clearly against the weight of the evidence as it was in this case. Consequently, Defendants' Motion for New Trial should be granted based upon the jury's answer to Question #1 with respect to Plaintiff, Ronald Duff and Defendant, Glen Patrick Peer.

13.     The court should also grant Defendants' Motion for New Trial on the issue of future medical expenses. The jury's verdict awarded Plaintiff $80,000.00 in future medical expenses. This was clearly against the weight of the evidence in this case. The only evidence whatsoever that Plaintiff would sustain any future medical expenses was the testimony of Plaintiff's treating physician Dr. Vitel Kushwawa. He testified that the only future medical care that Plaintiff might need would be for a cervical fusion, which he estimated to cost between $30,000.00 to $ 40,000.00.

14.     This was contained in the deposition of Dr. Kushwawa that was offered by the Plaintiff at trial, as follows;

> "**Question**: All Right. Now, regarding cost in 2005 dollars, as an orthopedic spine surgeon and—as a faculty member of UT and—on the staff of Hermann, are you familiar with the general costs, including surgical fees, hospital stay and anesthesiology of an interior surgical fusion?
> **Answer**: Yes.
> **Question**: In today's dollars, Dr. Kushwawa how much is that?
> **Answer**: It's about $40,000.00.
> **Question**: Ok and about how many months off work?
> **Answer**: For him to go back full duty he'll be off work 4 months." **(Page 79, Line 22-**

6

Page 80, Line 9, Oral deposition of Dr. Kushwawa.)

15.     The only other evidence presented by the Plaintiff concerning future medical care was a letter written by Dr. Kushwawa on April 13, 2005, which was marked VPK013 and which was part of Plaintiff's Exhibit "12A". In that document, Dr. Kushwawa indicated that: "ultimately the cost of that surgery would be in the range of $30,000.00 to $40,000.00, with him being off work 3-4 months".

16.     There was no other testimony of any other medical care or treatment that Plaintiff would need in the future from any other source. Therefore, there was simply no basis for the jury's conclusion that future medical care in this case would cost $80,000.00. It is clear that the jury arbitrarily and capriciously doubled the amount of potential future medical care in this case without any factual basis for such a conclusion.

17.     This is a very type of erroneous jury finding that is properly corrected through a Motion for New Trial. It is clear that damages such as medical expenses must be supported by evidence establishing the reasonable value of those expenses, unlike awards of damages for pain and suffering which are not susceptible to proof by an exact dollar amount. **Simeon vs. T. Smith and Sons, Inc., 852 F.2d. 1421 (5th Cir. 1988); Mejias-Quiros vs. Maxxam Property Corporation, 108 F.3d. 425 (1st Cir. 1997).** Thus, there are numerous opinions where Motions for New Trial were granted to correct an erroneous jury award for future medical expenses. In **Mejias-Quiros vs. Maxxam Property Corporation**, supra, the court reduced an award of future medical expenses from $25,000.00 to $4,000.00 because the testimony of the only doctor indicated that future medical treatment for the Plaintiff would cost between $3,000.00 to $4,000.00. The court stated its opinion as follows:

> " Maxxam also appeals from the district court's denial of its Motion of New Trial on the ground that the $25,000.00 medical damages award was excessive. The federal rule is

7

that a jury verdict may be set aside and a new trial granted if the award is excessive or against the weight of the evidence...Dr. Carlos Portocarrero provided the only evidence regarding the actual cost of future medical treatment. He testified the reconstructive surgery to minimize Mejias facial scars, which resulted from the incident, would cost between $3,000.00 to $4,000.00. The only specific figures offered to the jury supported, at most, an award of $4,000.00...we think the medical expense awarded in this case to the extent it exceeded the $4,000.00 figure given for surgery lacked any rational basis...the judgment of the district court is vacated in so far that it awards $25,000.00 to Mejias for medical cost and otherwise affirmed and the matter is remanded to the district court for a new trial on medical costs unless Mejias accepts a remittitur reducing damages to $4,000.00 on this element of his damage claim." **Id. at 427-429**.

18.     A similar result was reached in **Simeon vs. T Smith and Sons, Inc., supra.** In that case, a jury award for future medical expenses of $30,000.00 was reduced to $10,000.00, because there was no evidence to support the jury's award. The court stated its holding as follows:

"The jury also awarded $30,000.00 for Simeon's future medical expenses. There is no evidence in the record to support an award of this size, and so it necessarily is based on impermissible conjecture...the only record or evidence regarding Simean's future medical expenses was testimony from his physician who said that there was a 50/50 chance that Simeon would need another operation at a total cost which would be $10,000.00. Accordingly, we are remitting or reducing Simeon's award for future medical expenses to $10,000.00, and if this is not accepted a new trial would be required. Based on the record evidence, this amount represents the maximum reasonable recovery for future medical expenses." **Id. at 1427-1428.**

19.     Similar results were reached in the cases of **Johnson vs. Michelin Tire Corporation, 812 F.2d. 200, 210 (5th Cir. 1987)**, (jury award for future medical treatment in excess of expenses testified to by treating doctor was clearly excessive and set aside) and **Porter vs. Kmart Corporation, 1998 U.S. Dist. LEXIS 15355 (ED, LA 1998)**.

20.     Therefore, It is clear that the only proper and competent evidence of future medical care for Plaintiff, Ronald Duff was the testimony and records of his treating physician Dr. Kushwawa, that he may need surgery in the future that would cost $30,000.00 to $40,000.00. There is no other evidence of any future medical care to support the jury's award of $80,000.00

8

for future medical expenses. It is obvious that the jury arbitrarily doubled the amount of these costs, which is impermissible. There must be a rational basis in the evidence to support any jury award for future medical care. There simply is none to support the jury's award. Therefore, Defendants' Motion for New Trial should be granted with respect to the jury verdict for future medical expenses in this case.

21.     Defendants' Motion for New Trial should also be granted on the issue of future loss of earning capacity. In answer to this question the jury awarded the Plaintiff $35,000.00. Once again, the jury's award of $35,000.00 for loss of future earning capacity is against the weight of the evidence. The only evidence of loss of future earning capacity was the testimony of Dr. Kushwawa. He indicated that in the event Plaintiff had future surgery he would fully recover and return to full duty as a Texas Ranger in 3 to 4 months. Dr. Kushwawa's testimony is the only evidence presented by the Plaintiff on the issue of loss of future earning capacity.

22.     There was no testimony from the Plaintiff or any other witness, that Plaintiff would otherwise not be able to work in his present position or suffer a loss of earning capacity in the future. In fact, Plaintiff testified that he had been able to fully function in his capacity as a Texas Ranger in the 20 months since the accident. There was no evidence of any inability of Plaintiff to work in the future. The only evidence of any loss of future earning capacity was the testimony of Dr. Kushwawa limited to a maximum of 4 months. Based on the evidence before the jury of Plaintiff's current earnings and past wage loss, this would have been approximately $17,000.00. Once again, as with the future medical expenses, the jury decided to arbitrarily and capriciously double the amount of the damages for which there was any evidence. Therefore, the jury's award for future loss of earning capacity should be vacated and set aside.

23.     As with other forms of damages, other than general types of damages such as pain

9

and suffering, there must be substantial evidence to support the jury's award. Jury awards for loss of future earnings or earning capacity that are not supported by the evidence are subject to being vacated and set aside by the trial court on a Motion for New Trial. See, **Anthony vs. GMD Airline Services, Inc., 17 F.3d. 490 (1st Cir. 1994).** See also, **Johnson vs. Michelin Tire Corporation, Id. at 208, 209.** Therefore, the jury's award of $35,000.00 for future earning capacity was clearly against the weight of the evidence and should be vacated and set aside.

24. Defendants also move for a new trial because the court erroneously allowed the admission of Defendant, Peer's Qualcomm Log, (Plaintiff's Exhibit "11") which contained a description of how the accident occurred. Specifically, the portion of the log that was admitted indicated that Plaintiff's vehicle came from behind another tractor/trailer unit. However, the next statement by Mr. Peer that the accident was not his fault, was deleted from the exhibit offered by the Plaintiff. Defendants were not permitted to offer the omitted portion into evidence. Defendants contend that admission of the log without the explanatory statement by Mr. Peer that the accident was not his fault, constituted prejudicial and reversible error and requires granting a new trial in this cause.

25. This principle was explained by the Supreme Court in, **Beech Aircraft Corporation vs. Rainey, 48 U.S. 153, 109 S. CT. 439, 102 L.ED. 2d 445 (1988).** In that opinion the Supreme Court held that it was error to allow one party to introduce a portion of a letter explaining how an accident occurred but deny the other party the right to offer the remainder of the letter, without which the part offered was misleading. The same principle applies with respect to Mr. Peer's log.

26. The portion of the log relied upon by Plaintiff was a substantial element of their liability case against Mr. Peer. Plaintiff tried to use it to convince the jury that Mr. Peer was not

paying attention because he did not see Plaintiff's vehicle until last minute because it was behind

another tractor/trailer. However, it is clear when the entire portion is read that Mr. Peer intended

it to be an exculpatory statement, to the effect that the accident was not his fault because

Plaintiff's vehicle came from behind the truck; which is why Plaintiff was not able to see Mr.

Peer's vehicle and stop in order to avoid the accident. Therefore, by allowing Plaintiff to offer

only a portion of the statement, the jury was given a distorted and prejudicial impression of the

content and intent of Mr. Peer's log entry. The Supreme Court stated this principle as follows:

> "Respondents also contended on appeal that reversal was required because the District Court improperly restricted the cross-examination of the Plaintiff, Rainey by his own counsel in regard to the letter Rainey had addressed to Lieutenant Commander Morgan. We agree with the unanimous holding of the Court of Appeals en banc that the District Court erred in refusing to permit Rainey to present a more complete picture of what he had written to Morgan. We have no doubt that the jury was given a distorted and prejudicial impression of Rainey's letter...Because the court sustained defense counsel's objection, Rainey's counsel was unable to counteract this prejudicial impression by presenting additional information about the letter on cross-examination. The common law 'rule of completeness' which underlines Federal Rule of Evidence 106, was designed to prevent exactly the type of prejudice of which Rainey complains...The opponent, against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance...When one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is ipso facto relevant and admissible under Rules 401 and 402...The District Court's refusal to admit the proffered completion evidence was a clear abuse of discretion." **Id. at 170-172**

27.     Therefore, by refusing to permit Defendants to offer the explanatory statement of

Defendant, Peer, which was part of his Qualcomm log and which immediately followed the part

relied upon by the Plaintiff, the jury was given a distorted picture of the meaning and intent of

Mr. Peer's statement. Therefore, Defendants should be entitled to a new trial on this issue due to

the prejudicial affect of this evidence as shown by the use and reliance on this log by the Plaintiff

at trial.

11

28. Defendants are also moving for a new trial on the basis that it was error to admit Plaintiff's Exhibit "1", the DPS accident report, which contained opinions to the effect that the accident was caused by Defendant, Peer's failure to yield the right of way to the Plaintiff. This report was tendered as an official police report under Federal Rule of Evidence 803 (8), but it should not have been admitted because it was untrustworthy for several reasons. First, the Trooper that prepared the report was employed by the Texas Department of Public Safety, who was also Plaintiff's employer. Therefore, there was an inherent conflict of interest between the duties of the investigating officer to impartially evaluate the accident and the fact that the DPS had a financial interest in the outcome of the case. As an employee of the DPS, Plaintiff was paid worker's compensation benefits by the State of Texas. Therefore, the State of Texas, and the DPS as a division of the State, was actually a party to this cause and had a financial interest in Plaintiff obtaining a favorable verdict in order to recover its subrogated interest. In addition, Plaintiff was driving a state owned vehicle at the time of the accident, which was damaged. Therefore, the DPS also had a potential right to recover for the damage to its vehicle, which also gave the DPS a vested interest in the outcome of this case. Therefore, there was no possible way that a report issued by an employee of the DPS could have been trustworthy under these circumstances.

29. The report was also untrustworthy because the Trooper that investigated the accident did not actually perform any reconstruction of the accident. She merely gathered information from which a reconstruction could have been performed. However, neither the investigating Trooper or any employee of the DPS ever performed a reconstruction of this accident. Therefore, the report and the opinions sustained in the report were untrustworthy, inherently unreliable and should have been excluded in their entirely. See, **Beech Aircraft**

12

**Corporation vs. Rainey, Id. at 157** (Report found trustworthy because it contained a "detailed reconstruction" of the accident).

30. In addition, under the Federal Rules of Evidence police reports are generally not admissible to establish negligence against a party to the accident. See, **Miller vs. Field, 35 F. 3d. 1088 (6th Cir. 1994); Phillips vs. Northwest Airlines Corporation, 88 Fed. Appx. 862 (6th Cir. 2004); Chrysler vs. City of West Covina, 1998 U.S. App. LEXIS 30993 (9th Cir. 1998).** Police reports are deemed unreliable and untrustworthy because the officers usually arrive at the scene after the accident occurs and base their reports and conclusions on the hearsay statements of witnesses without evaluating their reliability. In addition, most officers are either not qualified as accident reconstruction experts, or if they are, they do not actually reconstruct the accident and do not base their opinions on a scientific and reliable analysis of the physical evidence at the scene such as skid marks, damage patterns, crash evaluations, co-efficients of friction, speed, distance and other scientific factors based on physics. Furthermore, the admissibility of official records under 803(8) are subject to the same requirements as set forth in, **Daubert vs. Merrill Dow Pharmaceuticals, 509 U.S. 579 (1993).**

31. In, **Desrosiers vs. Flight International Florida, Inc., 156 F.3d. 952 (9th Cir. 1998),** the court held that official reports sought to be admitted under Rule 803(8) are subject to the requirements of **Daubert** and Rule 702. Therefore, the District Court has a gatekeeper function concerning official reports insuring that they are not admitted unless they are shown to be relevant, reliable or trustworthy. Plaintiff failed to establish that Exhibit "1" satisfied those requirements, because Trooper Lee never used the data she collected to reconstruct the accident based on scientific principles. Therefore, her opinions were the result of speculation and Exhibit #1 should have been excluded.

13

32.     Accordingly, Defendants should be granted a new trial in this cause because the jury's answer to Question #1 and the jury's answers concerning future medical expenses and loss of earning capacity were erroneous and clearly against the weight of the evidence. In addition, numerous errors were committed with respect to certain evidentiary matters that have been set forth herein, which in fairness require that Defendants be granted a new trial in this cause.

33.     WHEREFORE, Defendants pray that the court grant their Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for New Trial and for such other and further relief to which Defendants may show themselves to be justly entitled.

                              Respectfully submitted,

                              FROCK & BROUSSARD, P.C.

                              /S/ David Frock

                       By:_____
                              M. DAVID FROCK
                              2550 N. Loop West, #260
                              Houston, Texas 77092
                              (713) 688-2300
                              (713) 688-2377 FAX
                              State Bar No. 07484800
                              ATTORNEY FOR DEFENDANT
                              WERNER ENTERPRISES, INC. DOING
                              BUSINESS AS NEBRASKA WERNER
                              ENTERPRISES, INC. AND GLEN
                              PATRICK PEER

## CERTIFICATE OF SERVICE

        I hereby certify that a true and correct copy of the foregoing document has been sent via facsimile transmission and regular mail to all counsel of record on this 6th day of January 2006.

                              /S/ David Frock

                              _____
                              M. DAVID FROCK

14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| RONALD E. DUFF | § | |
| Plaintiff | § | |
| | § | |
| VERSUS | § | CIVIL ACTION NO. 9:05CV181 |
| | § | |
| GLEN PEER AND WERNER | § | |
| ENTERPRISES, INC DOING | § | |
| BUSINESS AS NEBRASKA | § | |
| WERNER ENTERPRISES, INC. | § | |

## ORDER

Be it remembered that on this day came to be heard and considered Defendants' Motion for New Trial and the Court after considering the Motion, pleadings, evidence and arguments of counsel is the opinion that of said Motion is meritorious and should be, in all things, granted; therefore, it is

ORDERED ADJUDGED AND DECREED that the Defendant's Motion for New Trial is granted and that the final judgment in this cause is hereby, in all things, vacated and set aside.

Signed this _____ day of _____, 2006.

_____
UNITED STATES DISTRICT JUDGE

USCA5 659

APPROVED:

FROCK & BROUSSARD, P.C.

*/S/ David Frock*

_____
M. DAVID FROCK
2550 North Loop West
Suite 260
Houston, Texas  77092
(713) 688-2300
(713) 688-2377 FAX
State Bar No. 07484800

ATTORNEY FOR DEFENDANTS

16



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| RONALD E. DUFF, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:05CV181 (TH) |
| | § | JURY |
| WERNER ENTERPRISES, INC. and | § | |
| GLEN PATRICK PEER, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER DENYING MOTION FOR NEW TRIAL

The Court **DENIES** defendants' *Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for New Trial* [Clerk's Docket No. 110] filed January 6, 2006.

**SO ORDERED.**

**SIGNED** this the **10** day of **January, 2006.**

Thad Heartfield
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| RONALD E. DUFF | § | |
| Plaintiff | § | |
| | § | |
| VERSUS | § | CIVIL ACTION NO. 9:05CV181 |
| | § | |
| GLEN PATRICK PEER AND WERNER | § | |
| ENTERPRISES, INC DOING | § | |
| BUSINESS AS NEBRASKA | § | |
| WERNER ENTERPRISES, INC. | § | |

*MOTION FOR NEW TRIAL OF DEFENDANTS, WERNER ENTERPRISES, INC. AND
GLEN PATRICK PEER*

TO THE HONORABLE UNITED STATES DISTRICT COURT:

DEFENDANTS, WERNER ENTERPRISES, INC. (Werner) and GLEN PATRICK PEER

(Peer) present this Motion for New Trial pursuant to Fed. R. Civ. P. 59, as follows:

1.      On or about December 7, 2005 the jury in the above referenced cause entered a

verdict finding that the negligence of Defendant, Peer was the proximate cause of the accident in

question, but that Plaintiff, Ronald Duff was not negligent.  The jury's verdict also awarded

Plaintiff $35,000.00 for loss of future earning capacity and $80,000.00 for future medical expenses.

2.      Thereafter, on January 11, 2006 the Court entered a Final Judgment in favor of the

Plaintiff and against the Defendants based on the jury verdict.  Pursuant to Fed. R. Civ. P. 59,

Defendants bring and present this Motion for a New Trial within ten (10) days after entry of the

Final Judgment.

3.      Under Rule 59, Fed. Civ. P., a trial court has broad power to grant a new trial and

set aside a jury verdict. **Smith vs. Transworld Drilling Company**, 773 F.2d. 610 (5th Cir. 1985).

1

The trial court can grant a new trial for a number of traditionally recognized reasons. A new trial can be granted if the court finds that the verdict is against the weight of the evidence. **Carr vs. Wal-Mart Stores, Inc.,** 312 F.3d 667 (5th Cir. 2002); **Eyre vs. McDonough Power Equipment, Inc.,** 755 Fd. 2d 416 (5th Cir. 1985); **Conway vs. Chemical Leaman Tank Lines, Inc.,** 610 F. 2d. 360 (5th Cir. 1980). A court can also grant a new trial if the damages awarded by the jury are excessive, the trial is unfair, or prejudicial error was committed during the trial. **Winger vs. Winger,** 82 F.3d 160 (7th Cir. 1996); **Westbrook vs. General Tire and Rubber Company,** 754 F.2d. 1233 (5th Cir. 1985); **Carson vs. Polley,** 689 F. 2d. 562 (5th Cir. 1982); **Martinez vs. Food City, Inc.,** 658 F.2d. 369 (5th Cir. 1981); **Hand vs. United States,** 441 F.2d. 529 (5th Cir. 1971); **Reed Brothers, Inc. vs. Monsano Company,** 525 F.2d. 486 (8th Cir. 1975) cert. denied, 423 U.S. 1055 (1976).

4.     When a court grants a new trial on the basis that the verdict is contrary to the weight of the evidence, the court need not view the evidence in a light most favorable to the non-moving party or the jury's verdict. The court has the power to weigh the evidence and grant a new trial even if there is substantial evidence to support the verdict. **Crane vs. Consolidated Rail Corporation,** 1983 U.S. Dist. LEXIS 19735 (SD. NY 1984).

5.     In this case, it is clear that the jury's verdict was against the clear weight of the evidence and should be set aside and a new trial ordered. In answer to Question #1, the jury found that the accident was caused by the negligence of Defendant, Peer, but that Plaintiff, Ronald Duff was not negligent. The jury's answer to Question #1, that Plaintiff was not negligent and that Defendant, Peer was negligent, was against the weight of the evidence in this case.

6.     This accident occurred when a commercial motor vehicle being operated by Defendant, Peer was in the process of making a left turn onto US Hwy 59 South near Livingston,

2

Texas. Mr. Peer was pulling from a truck stop that was part of an area that included two gas stations, a parking lot for tractor/trailers, a convenience store and a restaurant along with five highway cross-overs and five driveways. It was an area of heavy traffic with vehicles frequently pulling in and out of the parking lots, gas stations, convenient store and restaurant, and also frequently using the cross-overs to change from one side of US Hwy 59 to another. The accident occurred about 7:00 p.m., but was in an area with good artificial lighting. It was also undisputed that Mr. Peer's truck was lighted and had reflective tape on the sides as required by federal regulations. It is clear that Plaintiff was operating an unmarked car, without any flashing lights or siren and was traveling at speeds of 93 to 100 mph prior to making application of his brakes. It is also undisputed that the maximum posted safe speed at the area where the accident occurred was 65 mph. It was also admitted by the Plaintiff that he was talking on his cell phone immediately prior to seeing Defendant's vehicle. Therefore, it is clear that Plaintiff's operation of his vehicle was greatly in excess of the lawful speed limit and under the conditions existing at the time of the accident, constituted a clear failure to act in a reasonable and prudent manner that was at least a proximate cause of the collision with Defendant's vehicle. Thus, the jury's answer of "no" with respect to Plaintiff in response to Question #1 and finding that Defendant, Peer was negligent, was against the weight of the evidence in this case and should be set aside.

7.    However, even more compelling evidence of Plaintiff's negligence was provided by Plaintiff's sole liability expert, Trooper Rae Shel Lee. Trooper Lee was the officer from the Department of Public Safety who investigated this accident and wrote the official DPS accident report. She testified that Plaintiff's speed of 93 to 100 mph in the area where the accident occurred was a violation of the speed limit, was excessive and was unsafe. She also testified that Plaintiff's excessive speed was one of the causes of the accident. Trooper Lee also stated that even if the

3

Plaintiff was operating his vehicle under emergency conditions, his admitted speed of 93 to 100 mph was unsafe and unreasonable in the area where the accident occurred, because it was an area of heavy traffic and frequent accidents and he was not using flashers or a siren. The fact that this evidence, which was so highly critical of the Plaintiff, came from the investigating DPS Trooper and expert called by the Plaintiff, gives it particular weight and importance in this case. Moreover, the testimony of Trooper Lee was uncontradicted by any other witness.

8.    Trooper Lee's testimony was also consistent with the evidence provided by Defendant's accident reconstruction expert, Robert Swint. Mr. Swint, using the measurements made by Trooper Lee at the accident scene, reconstructed the accident and reached some opinions based on the data provided by the electronic control module in Plaintiff's vehicle that had been downloaded by the DPS. Based on this information, Mr. Swint was able to determine that Mr. Peer began his movement across US Hwy 59 North, in order to turn left, at least 8 seconds before the impact. At that time, based on Plaintiff's admitted speed, Plaintiff would have been approximately 1300 feet from the point of impact, a distance of over 4 football fields. Based on calculations for perception and reaction time and recognized stopping distances, Plaintiff had more than enough time to reduce the speed of his vehicle and avoid the accident. Therefore, Mr. Swint concluded that the accident was caused by the combination of Plaintiff's excessive speed, his failure to be attentive and maintain a proper lookout and to make a timely application of his brakes. In fact, the data from the ECM module in Plaintiff's vehicle clearly indicates that he delayed making a full application of his brakes until 3 seconds before the impact, which shows inattention, distraction and a failure to properly perceive Defendant's vehicle, which had already entered the intersection to complete its turn.

4

9.     Therefore, the evidence was actually overwhelming and conclusive that Plaintiff was traveling at an excessive and unsafe speed at the time of the accident and was distracted, inattentive and failed to make a timely application of his brakes, all of which were a contributing cause of the accident.  Therefore, the jury's conclusion that the Plaintiff was not negligent and that Defendant, Peer was negligent in causing the accident, was completely contrary to the evidence and against the weight of the evidence and should be vacated and set aside in this case.

10.     There is ample precedent for granting a new trial where the jury has failed to make a finding of negligence against a party that is against the weight of the evidence.  In **Cates vs. Creamer, 2005 U.S. App. LEXIS 25602 (5th Cir. 2005),** the Court of Appeals affirmed the granting of a new trial where the jury failed to find a motorist negligent who fell asleep at the wheel.  The Fifth Circuit indicated that it frequently affirms the granting of Motions for New Trial on evidentiary grounds alone.  In another opinion, **Simco vs. Ellis, 303 F.3d. 929 (8th Cir. 2002)** the appellate court affirmed the trial court's granting of a Motion for New Trial, finding that a jury's failure to conclude that a motorist was negligent was against the weight of the evidence.  In that case, the motorist in question was traveling above the recommended speed limit.  The trial court concluded and the appellate court agreed that the jury's failure to find the motorist who was speeding negligent, was against the weight of the evidence and should be overturned.  Similar results were reached in, **Hairston vs. Long Island Railroad Company, 2003 U.S. Dist. LEXIS 9015 (SD, NY) 2003; and Crane vs. Consolidated Rail Corporation, supra.**

12.     Therefore, it is clear that the jury's failure to find that Plaintiff, Ronald Duff was negligent in answer to Question #1 should be vacated because it was contrary to the weight of the evidence in this case.  The conclusion that Mr. Duff's negligence was a contributing cause of the

5

accident was strongly supported in the evidence. Moreover, there is extensive support for overturning a jury's finding that a party was not negligent through a Motion for New Trial, under circumstances where it is clearly against the weight of the evidence as it was in this case. Consequently, Defendants' Motion for New Trial should be granted based upon the jury's answer to Question #1 with respect to Plaintiff, Ronald Duff and Defendant, Glen Patrick Peer.

13. The court should also grant Defendants' Motion for New Trial on the issue of future medical expenses. The jury's verdict awarded Plaintiff $80,000.00 in future medical expenses. This was clearly against the weight of the evidence in this case. The only evidence whatsoever that Plaintiff would sustain any future medical expenses was the testimony of Plaintiff's treating physician Dr. Vitel Kushwawa. He testified that the only future medical care that Plaintiff might need would be for a cervical fusion, which he estimated to cost between $30,000.00 to $ 40,000.00.

14. This was contained in the deposition of Dr. Kushwawa that was offered by the Plaintiff at trial, as follows;

> "**Question**: All Right. Now, regarding cost in 2005 dollars, as an orthopedic spine surgeon and—as a faculty member of UT and—on the staff of Hermann, are you familiar with the general costs, including surgical fees, hospital stay and anesthesiology of an interior surgical fusion?
> **Answer**: Yes.
> **Question**: In today's dollars, Dr. Kushwawa how much is that?
> **Answer**: It's about $40,000.00.
> **Question**: Ok and about how many months off work?
> **Answer**: For him to go back full duty he'll be off work 4 months." **(Page 79, Line 22-Page 80, Line 9, Oral deposition of Dr. Kushwawa.)**

15. The only other evidence presented by the Plaintiff concerning future medical care was a letter written by Dr. Kushwawa on April 13, 2005, which was marked VPK013 and which was part of Plaintiff's Exhibit "12A". In that document, Dr. Kushwawa indicated that:

6

"ultimately the cost of that surgery would be in the range of $30,000.00 to $40,000.00, with him being off work 3-4 months".

16.     There was no other testimony of any other medical care or treatment that Plaintiff would need in the future from any other source. Therefore, there was simply no basis for the jury's conclusion that future medical care in this case would cost $80,000.00. It is clear that the jury arbitrarily and capriciously doubled the amount of potential future medical care in this case without any factual basis for such a conclusion.

17.     This is a very type of erroneous jury finding that is properly corrected through a Motion for New Trial. It is clear that damages such as medical expenses must be supported by evidence establishing the reasonable value of those expenses, unlike awards of damages for pain and suffering which are not susceptible to proof by an exact dollar amount. **Simeon vs. T. Smith and Sons, Inc., 852 F.2d. 1421 (5th Cir. 1988); Mejias-Quiros vs. Maxxam Property Corporation, 108 F.3d. 425 (1st Cir. 1997).** Thus, there are numerous opinions where Motions for New Trial were granted to correct an erroneous jury award for future medical expenses. In **Mejias-Quiros vs. Maxxam Property Corporation**, supra, the court reduced an award of future medical expenses from $25,000.00 to $4,000.00 because the testimony of the only doctor indicated that future medical treatment for the Plaintiff would cost between $3,000.00 to $4,000.00. The court stated its opinion as follows:

> " Maxxam also appeals from the district court's denial of its Motion of New Trial on the ground that the $25,000.00 medical damages award was excessive. The federal rule is that a jury verdict may be set aside and a new trial granted if the award is excessive or against the weight of the evidence...Dr. Carlos Portocarrero provided the only evidence regarding the actual cost of future medical treatment. He testified the reconstructive surgery to minimize Mejias facial scars, which resulted from the incident, would cost between $3,000.00 to $4,000.00. The only specific figures offered to the jury supported, at most, an award of $4,000.00...we think the medical expense awarded in this case to the extent it exceeded the $4,000.00 figure given for surgery lacked any rational basis...the judgment of the district court is vacated in so far that it awards $25,000.00 to

7

Mejias for medical cost and otherwise affirmed and the matter is remanded to the district court for a new trial on medical costs unless Mejias accepts a remittitur reducing damages to $4,000.00 on this element of his damage claim." **Id. at 427-429.**

18.  A similar result was reached in **Simeon vs. T Smith and Sons, Inc., supra.** In that case, a jury award for future medical expenses of $30,000.00 was reduced to $10,000.00, because there was no evidence to support the jury's award. The court stated its holding as follows:

> "The jury also awarded $30,000.00 for Simeon's future medical expenses. There is no evidence in the record to support an award of this size, and so it necessarily is based on impermissible conjecture...the only record or evidence regarding Simean's future medical expenses was testimony from his physician who said that there was a 50/50 chance that Simeon would need another operation at a total cost which would be $10,000.00. Accordingly, we are remitting or reducing Simeon's award for future medical expenses to $10,000.00, and if this is not accepted a new trial would be required. Based on the record evidence, this amount represents the maximum reasonable recovery for future medical expenses." **Id. at 1427-1428.**

19.  Similar results were reached in the cases of **Johnson vs. Michelin Tire Corporation, 812 F.2d. 200, 210 (5th Cir. 1987),** (jury award for future medical treatment in excess of expenses testified to by treating doctor was clearly excessive and set aside) and **Porter vs. Kmart Corporation, 1998 U.S. Dist. LEXIS 15355 (ED, LA 1998).**

20.  Therefore, It is clear that the only proper and competent evidence of future medical care for Plaintiff, Ronald Duff was the testimony and records of his treating physician Dr. Kushwawa, that he may need surgery in the future that would cost $30,000.00 to $40,000.00. There is no other evidence of any future medical care to support the jury's award of $80,000.00 for future medical expenses. It is obvious that the jury arbitrarily doubled the amount of these costs, which is impermissible. There must be a rational basis in the evidence to support any jury award for future medical care. There simply is none to support the jury's award. Therefore, Defendants' Motion for New Trial should be granted with respect to the jury verdict for future

8

medical expenses in this case.

21.     Defendants' Motion for New Trial should also be granted on the issue of future loss of earning capacity. In answer to this question the jury awarded the Plaintiff $35,000.00. Once again, the jury's award of $35,000.00 for loss of future earning capacity is against the weight of the evidence. The only evidence of loss of future earning capacity was the testimony of Dr. Kushwawa. He indicated that in the event Plaintiff had future surgery he would fully recover and return to full duty as a Texas Ranger in 3 to 4 months. Dr. Kushwawa's testimony is the only evidence presented by the Plaintiff on the issue of loss of future earning capacity.

22.     There was no testimony from the Plaintiff or any other witness, that Plaintiff would otherwise not be able to work in his present position or suffer a loss of earning capacity in the future. In fact, Plaintiff testified that he had been able to fully function in his capacity as a Texas Ranger in the 20 months since the accident. There was no evidence of any inability of Plaintiff to work in the future. The only evidence of any loss of future earning capacity was the testimony of Dr. Kushwawa limited to a maximum of 4 months. Based on the evidence before the jury of Plaintiff's current earnings and past wage loss, this would have been approximately $17,000.00. Once again, as with the future medical expenses, the jury decided to arbitrarily and capriciously double the amount of the damages for which there was any evidence. Therefore, the jury's award for future loss of earning capacity should be vacated and set aside.

23.     As with other forms of damages, other than general types of damages such as pain and suffering, there must be substantial evidence to support the jury's award. Jury awards for loss of future earnings or earning capacity that are not supported by the evidence are subject to being vacated and set aside by the trial court on a Motion for New Trial. See, **Anthony vs. GMD Airline Services, Inc., 17 F.3d. 490 (1st Cir. 1994)**. See also, **Johnson vs. Michelin Tire**

9

**Corporation, Id. at 208, 209.** Therefore, the jury's award of $35,000.00 for future earning capacity was clearly against the weight of the evidence and should be vacated and set aside.

24.     Defendants also move for a new trial because the court erroneously allowed the admission of Defendant, Peer's Qualcomm Log, (Plaintiff's Exhibit "11") which contained a description of how the accident occurred. Specifically, the portion of the log that was admitted indicated that Plaintiff's vehicle came from behind another tractor/trailer unit. However, the next statement by Mr. Peer that the accident was not his fault, was deleted from the exhibit offered by the Plaintiff. Defendants were not permitted to offer the omitted portion into evidence. Defendants contend that admission of the log without the explanatory statement by Mr. Peer that the accident was not his fault, constituted prejudicial and reversible error and requires granting a new trial in this cause.

25.     This principle was explained by the Supreme Court in, **Beech Aircraft Corporation vs. Rainey, 48 U.S. 153, 109 S. CT. 439, 102 L.ED. 2d 445 (1988).** In that opinion the Supreme Court held that it was error to allow one party to introduce a portion of a letter explaining how an accident occurred but deny the other party the right to offer the remainder of the letter, without which the part offered was misleading. The same principle applies with respect to Mr. Peer's log.

26.     The portion of the log relied upon by Plaintiff was a substantial element of their liability case against Mr. Peer. Plaintiff tried to use it to convince the jury that Mr. Peer was not paying attention because he did not see Plaintiff's vehicle until last minute because it was behind another tractor/trailer. However, it is clear when the entire portion is read that Mr. Peer intended it to be an exculpatory statement, to the effect that the accident was not his fault because Plaintiff's vehicle came from behind the truck; which is why Plaintiff was not able to see Mr.

10

Peer's vehicle and stop in order to avoid the accident. Therefore, by allowing Plaintiff to offer only a portion of the statement, the jury was given a distorted and prejudicial impression of the content and intent of Mr. Peer's log entry. The Supreme Court stated this principle as follows:

> "Respondents also contended on appeal that reversal was required because the District Court improperly restricted the cross-examination of the Plaintiff, Rainey by his own counsel in regard to the letter Rainey had addressed to Lieutenant Commander Morgan. We agree with the unanimous holding of the Court of Appeals en banc that the District Court erred in refusing to permit Rainey to present a more complete picture of what he had written to Morgan. We have no doubt that the jury was given a distorted and prejudicial impression of Rainey's letter...Because the court sustained defense counsel's objection, Rainey's counsel was unable to counteract this prejudicial impression by presenting additional information about the letter on cross-examination. The common law 'rule of completeness' which underlines Federal Rule of Evidence 106, was designed to prevent exactly the type of prejudice of which Rainey complains...The opponent, against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance...When one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is ipso facto relevant and admissible under Rules 401 and 402...The District Court's refusal to admit the proffered completion evidence was a clear abuse of discretion." **Id. at 170-172**

27. Therefore, by refusing to permit Defendants to offer the explanatory statement of Defendant, Peer, which was part of his Qualcomm log and which immediately followed the part relied upon by the Plaintiff, the jury was given a distorted picture of the meaning and intent of Mr. Peer's statement. Therefore, Defendants should be entitled to a new trial on this issue due to the prejudicial affect of this evidence as shown by the use and reliance on this log by the Plaintiff at trial.

28. Defendants are also moving for a new trial on the basis that it was error to admit Plaintiff's Exhibit "1", the DPS accident report, which contained opinions to the effect that the accident was caused by Defendant, Peer's failure to yield the right of way to the Plaintiff. This report was tendered as an official police report under Federal Rule of Evidence 803 (8), but it

11

should not have been admitted because it was untrustworthy for several reasons. First, the Trooper that prepared the report was employed by the Texas Department of Public Safety, who was also Plaintiff's employer. Therefore, there was an inherent conflict of interest between the duties of the investigating officer to impartially evaluate the accident and the fact that the DPS had a financial interest in the outcome of the case. As an employee of the DPS, Plaintiff was paid worker's compensation benefits by the State of Texas. Therefore, the State of Texas, and the DPS as a division of the State, was actually a party to this cause and had a financial interest in Plaintiff obtaining a favorable verdict in order to recover its subrogated interest. In addition, Plaintiff was driving a state owned vehicle at the time of the accident, which was damaged. Therefore, the DPS also had a potential right to recover for the damage to its vehicle, which also gave the DPS a vested interest in the outcome of this case. Therefore, there was no possible way that a report issued by an employee of the DPS could have been trustworthy under these circumstances.

29. The report was also untrustworthy because the Trooper that investigated the accident did not actually perform any reconstruction of the accident. She merely gathered information from which a reconstruction could have been performed. However, neither the investigating Trooper or any employee of the DPS ever performed a reconstruction of this accident. Therefore, the report and the opinions sustained in the report were untrustworthy, inherently unreliable and should have been excluded in their entirely. See, **Beech Aircraft Corporation vs. Rainey, Id. at 157** (Report found trustworthy because it contained a "detailed reconstruction" of the accident).

30. In addition, under the Federal Rules of Evidence police reports are generally not admissible to establish negligence against a party to the accident. See, **Miller vs. Field, 35 F.**

12

3d. 1088 (6th Cir. 1994); <u>Phillips vs. Northwest Airlines Corporation,</u> 88 Fed. Appx. 862 (6th Cir. 2004); <u>Chrysler vs. City of West Covina,</u> 1998 U.S. App. LEXIS 30993 (9th Cir. 1998). Police reports are deemed unreliable and untrustworthy because the officers usually arrive at the scene after the accident occurs and base their reports and conclusions on the hearsay statements of witnesses without evaluating their reliability. In addition, most officers are either not qualified as accident reconstruction experts, or if they are, they do not actually reconstruct the accident and do not base their opinions on a scientific and reliable analysis of the physical evidence at the scene such as skid marks, damage patterns, crash evaluations, co-efficients of friction, speed, distance and other scientific factors based on physics. Furthermore, the admissibility of official records under 803(8) are subject to the same requirements as set forth in, <u>**Daubert vs. Merrill Dow Pharmaceuticals,**</u> 509 U.S. 579 (1993).

31. In, <u>**Desrosiers vs. Flight International Florida, Inc.,**</u> 156 F.3d. 952 (9th Cir. 1998), the court held that official reports sought to be admitted under Rule 803(8) are subject to the requirements of **Daubert** and Rule 702. Therefore, the District Court has a gatekeeper function concerning official reports insuring that they are not admitted unless they are shown to be relevant, reliable or trustworthy. Plaintiff failed to establish that Exhibit "1" satisfied those requirements, because Trooper Lee never used the data she collected to reconstruct the accident based on scientific principles. Therefore, her opinions were the result of speculation and Exhibit #1 should have been excluded.

32. Accordingly, Defendants should be granted a new trial in this cause because the jury's answer to Question #1 and the jury's answers concerning future medical expenses and loss of earning capacity were erroneous and clearly against the weight of the evidence. In addition, numerous errors were committed with respect to certain evidentiary matters that have been set

13

forth herein, which in fairness require that Defendants be granted a new trial in this cause.

33.     WHEREFORE, Defendants pray that the court grant their Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for New Trial and for such other and further relief to which Defendants may show themselves to be justly entitled.

Respectfully submitted,

FROCK & BROUSSARD, P.C.

*/S/ David Frock*

By:_____
M. DAVID FROCK
2550 N. Loop West, #260
Houston, Texas 77092
(713) 688-2300
(713) 688-2377 FAX
State Bar No. 07484800
ATTORNEY FOR DEFENDANT
WERNER ENTERPRISES, INC. DOING
BUSINESS AS NEBRASKA WERNER
ENTERPRISES, INC. AND GLEN
PATRICK PEER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent via facsimile transmission and regular mail to all counsel of record on this 6th day of January 2006.

*/S/ David Frock*

_____
M. DAVID FROCK

14

USCA5 677



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| RONALD E. DUFF, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:05CV181 (TH) |
| | § | JURY |
| WERNER ENTERPRISES, INC. and | § | |
| GLEN PATRICK PEER, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER DENYING MOTION FOR NEW TRIAL

The Court **DENIES** defendants' *Motion for New Trial* [Clerk's Docket No. 113] filed January 13, 2006.

**SO ORDERED.**

**SIGNED** this the 17 day of **January, 2006.**

Thad Heartfield
United States District Judge



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### LUFKIN DIVISION

| | | |
|---|---|---|
| RONALD E. DUFF, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:05CV181 (TH) |
| | § | JURY |
| WERNER ENTERPRISES, INC. and | § | |
| GLEN PATRICK PEER, | § | |
| | § | |
| *Defendants.* | § | |

## FINAL JUDGMENT

This action is before the Court following a jury verdict in favor of plaintiff Ronald E. Duff. All issues have been tried and a decision has been rendered. On December 28, 2005, plaintiff filed a motion seeking entry of judgment [Clerk's Docket No. 109], to which defendants did not file a response.

**IT IS ORDERED** that plaintiff Ronald E. Duff shall recover the sum of $ 300,000.00 in damages from defendants Werner Enterprises, Inc. and Glen Patrick Peer jointly and severally.

**IT IS FURTHER ORDERED** that pursuant to Texas law plaintiff Ronald E. Duff shall recover pre-judgment interest on the sum of $ 77,000.00 at the annual rate of 5% to be paid from October 28, 2004 to the day preceding the date judgment is rendered.

**IT IS FURTHER ORDERED** that pursuant to 28 U.S.C. § 1961 plaintiff Ronald E. Duff shall recover post-judgment interest on the judgment at the rate of 4.37% (weekly average 1-year constant maturity Treasury yield published by the Federal Reserve System for the calendar week ending January 6, 2006) to be paid from the date judgment is rendered until the date it is paid.

**IT IS FURTHER ORDERED** that pursuant to FEDERAL RULE OF CIVIL PROCEDURE 54(d) (1) plaintiff is entitled to costs of court from defendants. To this end, plaintiff is directed to file and serve upon defendants a verified bill of costs.

)                                    )

**IT IS FURTHER ORDERED** that pursuant to FEDERAL RULE OF CIVIL PROCEDURE 69(a) execution shall issue for this judgment.

**IT IS FURTHER ORDERED** that all relief not expressly granted in this final judgment is **DENIED**.

**SO ORDERED.**

**SIGNED** this the 11 day of **January, 2006.**

Thad Heartfield
United States District Judge

2



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

FILED - CLERK
U.S. DISTRICT COURT

2006 FEB -8  AM 11: 26

TX EASTERN - LUFKIN

BY_____

| | | |
|---|---|---|
| RONALD E. DUFF | § | |
| Plaintiff | § | |
| | § | |
| VERSUS | § | CIVIL ACTION NO. 9:05CV181(TH) |
| | § | JURY |
| GLEN PEER AND WERNER | § | |
| ENTERPRISES, INC DOING | § | |
| BUSINESS AS NEBRASKA | § | |
| WERNER ENTERPRISES, INC. | § | |

*NOTICE OF APPEAL*

Notice is hereby given that Defendants, Werner Enterprises, Inc. and Glen Patrick Peer,

hereby appeal to the United States Court of Appeals for the Fifth Circuit from the Final Judgment

entered in this action on the 11th day of January, 2006.

Respectfully submitted,

FROCK & BROUSSARD, P.C.

By: _____

M. DAVID FROCK
2550 N. Loop West, #260
Houston, Texas 77092
(713) 688-2300
(713) 688-2377 FAX
State Bar No. 07484800
ATTORNEY FOR DEFENDANTS
WERNER ENTERPRISES, INC. AND
GLEN PATRICK PEER

# **Contents**

9. Pertinent statutes:

    a.    TEX. CIV. P. REM. CODE § 33.001

    b.    TEX. CIV. P. REM. CODE § 33.003

    c.    TEX. CIV. P. REM. CODE § 33.012

    d.    TEX. TRANSPORTATION CODE § 546.001

    e.    TEX. TRANSPORTATION CODE § 546.002

    f.    TEX. TRANSPORTATION CODE § 546.003

    g.    TEX. TRANSPORTATION CODE § 546.004

    h.    TEX. TRANSPORTATION CODE § 546.005

Liability for medical appliances in malpractice suits. Ira Watrous, 10 Tex.Tech L.Rev. 405 (1979).

Medical malpractice: Defenses. Jim M. Perdue, 11 Hous.L.Rev. 848 (1974).

Negligence law, no-fault, and jury trial. Leon Green and Allen E. Smith, 51 Tex.L.Rev. 825 (1973).

1987 Texas tort reform: The quest for a fairer and more predictable Texas civil justice system. John T. Montford and Will G. Barber, 25 Hous. L.Rev. 245 (1988).

1987 Texas tort reform legislation and its effects. Don A. Wetzel and Stephen M. Schlacks, 25 Hous.Law. 40 (Nov.–Dec. 1987).

Products liability in Texas. J. H. Edgar, 11 Tex.Tech L.Rev. 23 (1979).

Products liability in Texas and proposal to require privity within implied warranty of merchantability. 38 Sw.L.J. 915 (1984).

Proposals for revisions to Texas civil statutes. B. Thomas McElroy, 44 Tex.B.J. 257 (1981).

Proposed modified comparative negligence statute. Frank T. Abraham, 35 Tex.B.J. (1972).

Significant developments: Tort litigation Texas. Ernest Reynolds III, 47 Tex.B.J. (1984).

State of the special verdict—1979. Jack and William G. Lowerre, 11 St.Mary's (1979).

Statutory damages recovery: Comparative negligence. Howard Nations, 18 S.Tex.L.J. (1977).

Texas guest statute revisited. Howard Nations, 19 Hous.Law. 42 (May 1982).

Texas tort law in transition. 57 Tex.L.Rev. 381 (1979).

Understanding pure comparative causation Texas gross negligence cases. Kirk Purcell, Tex.B.J. 274 (1986).

Voluntary assumption of risk and Texas comparative negligence statute. 26 Baylor L.Rev. 543 (1974).

# SUBCHAPTER A. PROPORTIONATE RESPONSIBILITY

## § 33.001. Proportionate Responsibility

In an action to which this chapter applies, a claimant may not recover damages if his percentage of responsibility is greater than 50 percent.

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., 1st C.S., ch. 2, § 2.04, eff. Sept. 2, 1987; Acts 1995, 74th Leg., ch. 136, § 1, eff. Sept. 1995.

### Revisor's Note

The words "party" and "legal representative of any person or party" are omitted because they are included in the Code Construction Act (V.A.C.S. Article 5429b–2) definition of "person."

### Historical and Statutory Notes

The 1987 amendment, in the Chapter 33 heading, the subchapter A heading and the section heading, substituted "responsibility" for "negligence"; and rewrote the section, which previously read:

"(a) In an action to recover damages for negligence resulting in death or injury to a person or property, contributory negligence does not bar recovery if the contributory negligence is not greater than the negligence of the person or persons against whom recovery is sought.

"(b) Damages allowed are diminished in proportion to the amount of negligence attributed to the person recovering."

The 1995 amendment, in the Chapter 33 heading, the Subchapter A heading and the section heading, substituted "Proportionate" for "Comparative"; and rewrote the section, which formerly read:

"(a) In an action to recover damages for negligence resulting in personal injury, property damage, or death or an action for product liability grounded in negligence, a claimant may recover damages only if his percentage of responsibility is less than or equal to 50 percent.

"(b) In an action to recover damages for personal injury, property damage, or death in which at least one defendant is found liable on...

27 Tex. Prac. Series § 1.20, Actions For Personal Injury, Death And Other Property Damage.

39 Tex. Prac. Series § 19.12, Contributory Negligence And The Comparative Responsibility Doctrine.

37 Tex. Prac. Series § 477, Third Party Actions-Contribution.

## Notes of Decisions

### 1. Construction and application

Proportionate responsibility statute did not apply to purchasers' claim of statutory fraud for vendors alleged misrepresentation of defect in house foundation, and thus, purchasers' damages were not barred or reduced by their negligence; proportionate responsibility statute did not specifically include Fraud in Real Estate and Stock Transactions statute within its application, and legislature had not amended fraud statute to apply proportionate responsibility scheme. Davis v. Estridge (App. 12 Dist. 2001) 85 S.W.3d 308, rehearing overruled, review denied. Consumer Protection ⊕ 8

Statutes providing that a claimant could recover damages from joint tortfeasor as long as the claimant's percentage of liability to a third party did not exceed fifty percent did not apply to tortfeasor's request for a settlement credit to reduce his liability for judgment for plaintiff in proportion to the sum co-tortfeasor had settled with plaintiff; tortfeasor and co-tortfeasor were held jointly and severally liable for plaintiff's damages rather than responsible for a percentage. Texas Capital Securities, Inc. v. Sandefer (App. 6 Dist. 2003) 2003 WL 1561312, withdrawn and superseded on rehearing 108 S.W.3d 923, rehearing overruled, review denied. Damages ⊕ 63

### 2. Choice of law

Texas settlement-credit statutes expressly applied to action for negligence and products liability filed in Texas court, and thus it was improper to conduct conflict-of-laws analysis regarding Louisiana's proportionate settlement credit, even though underlying gas-well explosion occurred in Louisiana; plaintiffs had settled with one of defendants for $63.8 million before jury assessed damages against remaining defendant, and settlement-credit statute stated that it applied to any cause of action

based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought. Smith v. Cudd Pressure Control Inc. (App. 1 Dist. 2003) 2003 WL 21299816, petition for review filed. Damages ⊕ 2

### 5. Workers' compensation

Texas Workers' Compensation Act's express abolishment of contributory negligence, assumption of risk, and other common law defenses of employers as penalty for failure to subscribe to workers' compensation system also precluded application of comparative responsibility statute in employee's negligence action against nonsubscribing employer; comparative responsibility issue submitted in a jury charge would always yield immaterial finding since, as a matter of law, employee could not be found contributorily negligent. Kroger Co. v. Keng (App. 12 Dist. 1998) 976 S.W.2d 882, review granted, affirmed 23 S.W.3d 347, rehearing overruled, rehearing of petition for review filed. Workers' Compensation ⊕ 2110; Workers' Compensation ⊕ 2111; Workers' Compensation ⊕ 2112

### 6. Exemplary damages

C & H Nationwide, Inc. v. Thompson (Sup. 1994) 903 S.W.2d 315, 42 A.L.R.5th 867, [main volume] rehearing dismissed.

### 8. Dram shops

Comparative Responsibility Act applies in motorist's personal injury claim against sellers of alcoholic beverages requiring determination of percentage of responsibility attributable to each party involved in causing alleged injury. Lewis v. Skippy's Mistake Bar (App. 2 Dist. 1996) 944 S.W.2d 1, rehearing overruled, reversed 940 S.W.2d 83. Intoxicating Liquors ⊕ 295

## § 33.003. Determination of Percentage of Responsibility

(a) The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:

(1) each claimant;

(2) each defendant;

(3) each settling person; and

(4) each responsible third party who has been designated under Section 33.004.

(b) This section does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission.

Added by Acts 1987, 70th Leg., 1st C.S., ch. 2, § 2.06, eff. Sept. 2, 1987. Amended by Acts 1995, 74th Leg., ch. 136, § 1, eff. Sept. 1, 1995; Acts 2003, 78th Leg., ch. 204, § 4.02, eff. Sept. 1, 2003.

due homeowner and found builder was liable for those damages pursuant to its warranty. Paceset-ter Pools, Inc. v. Pierce Homes, Inc. (App. 3 Dist. 2002) 86 S.W.3d 827. Contribution ⟐ 8

Partial settlement, settling vehicle driver's po-tential liability to automobile passenger injured in accident for any damages in excess of $13,050, did not absolve driver of all potential liability, and thus, he remained a "liable defendant" entitled to claim contribution from automobile operator, a nonsettling person whom the jury had found to be 60% liable for passenger's damages. Vela v. Garza (App. 13 Dist. 1998) 975 S.W.2d 801. Contribution ⟐ 6

**4. Defendant**

Vehicle driver bringing third-party action against automobile operator for contribution in automobile passenger's action against driver for damages arising from accident occupied the status of "claimant" as against the operator, and thus, the operator fell within the definition of "defendant," and was therefore entitled to make an election to have the driver's settlement agreement with the passenger credited dollar-for-dollar against the to-tal judgment. Vela v. Garza (App. 13 Dist. 1998) 975 S.W.2d 801. Damages ⟐ 63

**5. Claimant**

Oil well worker and his family seeking recovery of damages for injury to worker were one "claim-ant" as term is used in applying credit against judgment for settlement amounts previously paid, and thus, total of all damages recovered by family and worker had to be reduced by total of all settlements they received, after a 10% reduction attributable to worker's percentage of responsibili-ty, with remaining amount allocated among the family members according to their respective per-centages of the total jury award. Drilex Systems, Inc. v. Flores (Sup. 1999) 1 S.W.3d 112. Damages ⟐ 63

Parents of child killed in all-terrain vehicle (ATV) accident, who brought wrongful death action against manufacturer and dealers of ATV, were each a "claimant" entitled to recover amount of damages apportioned to them by jury and reduced by respective percentages of own, individual re-sponsibility, even though only one cause of action existed, in light of statutory preclusion of combina-tion of percentages for claimants to bar recovery. Sanchez ex rel. Estate of Galvan v. Brownsville Sports Center, Inc. (App. 13 Dist. 2001) 51 S.W.3d 643, amended on rehearing in part, rehearing over-

ruled, review granted, vacated. Products Liability ⟐ 40

Third-party trustee, which was found secondari-ly liable as aider under state securities law, in lawsuit by investors defrauded by broker in Ponzi scheme, was entitled, on basis of investors' settle-ment agreements with defendants who settled, to settlement credit against each individual investor's damage recovery in amount equal to amount of settlement money already received by that inves-tor, although trustee argued court should have used Drilex formula resulting in higher credit amount; Drilex was inapplicable because there multiple derivative claimants combined to form single claimant for credit purposes. Sterling Trust Co. v. Adderley (App. 2 Dist. 2008) 2003 WL 21770799, rehearing overruled, petition for review filed. Securities Regulation ⟐ 309

Husband, who was exposed to asbestos, and his wife, were single claimant for purposes of deter-mining settlement credits, and thus nonsettling contractor, that installed asbestos-containing mate-rial in tire plant, was entitled to full credit for total amount of all settlements with other defendants. Brown & Root Inc. v. Shelton (App. 12 Dist. 2003) 2003 WL 21771917. Damages ⟐ 63

**6. Percentage of responsibility**

Parents who brought wrongful death action against manufacturers of all-terrain vehicle (ATV) after child was killed in ATV accident were each entitled to recover for one-half of respective dam-ages, or one-half of $15 million in damages award-ed by jury, where parents and manufacturers were each found to be one-third liable for accident. Sanchez ex rel. Estate of Galvan v. Brownsville Sports Center, Inc. (App. 13 Dist. 2001) 51 S.W.3d 643, amended on rehearing in part, rehearing over-ruled, review granted, vacated. Products Liability ⟐ 40

**7. Responsible third party**

In suit brought by motorists injured in collision with intoxicated driver against the provider of alcoholic beverages who served the driver, motor-ists were not required to include the driver as a responsible third party; the provider was vicarious-ly liable for the actions of the driver and thus occupied the same position for purposes of the motorists' claim as the driver himself. F.F.P. Operating Partners, L.P. v. Duenez (App. 13 Dist. 2002) 69 S.W.3d 800, rehearing overruled, review granted. Intoxicating Liquors ⟐ 305

**§ 33.012. Amount of Recovery**

(a) If the claimant is not barred from recovery under Section 33.001, the court shall reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to the claimant's percentage of responsibility.

(b) If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to each settling person's percentage of responsibility.

(c) Notwithstanding Subsection (b), if the claimant in a health care liability claim filed under Chapter 74 has settled with one or more persons, the court shall further reduce the

eview granted, vacated. Products Liability

-party trustee, which was found secondari-
: as aider under state securities law, in
by investors defrauded by broker in Ponzi
was entitled, on basis of investors' settle-
reements with defendants who settled, to
nt credit against each individual investor's
recovery in amount equal to amount of
nt money already received by that inves-
iough trustee argued court should have
*ilex* formula resulting in higher credit
*Drilex* was inapplicable because there
derivative claimants combined to form
iimant for credit purposes. Sterling Trust
Adderley (App. 2 Dist. 2003) 2003 WL
l, rehearing overruled, petition for review
icurities Regulation ⇐ 309

nd, who was exposed to asbestos, and his
re single claimant for purposes of deter-
settlement credits, and thus nonsettling
ir, that installed asbestos-containing mate-
e plant, was entitled to full credit for total
of all settlements with other defendants.
Root Inc. v. Shelton (App. 12 Dist. 2003)
21771917. Damages ⇐ 63

entage of responsibility

s who brought wrongful death action
ianufacturers of all-terrain vehicle (ATV)
d was killed in ATV accident were each
o recover for one-half of respective dam-
ine-half of $15 million in damages award-
y, where parents and manufacturers were
ad to be one-third liable for accident.
ex rel. Estate of Galvan v. Brownsville
inter, Inc. (App. 13 Dist. 2001) 51 S.W.3d
ided on rehearing in part, rehearing over-
iew granted, vacated. Products Liability

insible third party

brought by motorists injured in collision
icated driver against the provider of
ieverages who served the driver, motor-
not required to include the driver as a
e third party; the provider was vicarious-
for the actions of the driver and thus
the same position for purposes of the
claim as the driver himself. F.F.P.
Partners, L.P. v. Duenez (App. 13 Dist.
3.W.3d 800, rehearing overruled, review
Intoxicating Liquors ⇐ 305

ection 33.001, the court shall reduce
ith respect to a cause of action by a
iility.

s, the court shall further reduce the
h respect to a cause of action by a
esponsibility:

. a health care liability claim filed
the court shall further reduce the

amount of damages to be recovered by the claimant with respect to a cause of action by an
amount equal to one of the following, as elected by the defendant:

(1) the sum of the dollar amounts of all settlements; or

(2) a percentage equal to each settling person's percentage of responsibility as found by
the trier of fact.

### Text of subsec. (d) as added by Acts 1995, 74th Leg., ch. 136, § 1

(d) This section shall not apply to benefits paid by or on behalf of an employer to an
employee pursuant to workers' compensation insurance coverage, as defined in Section
401.011(44), Labor Code, in effect at the time of the act, event, or occurrence made the basis
of claimant's suit.

### Text of subsec. (d) as added by Acts 2003, 78th Leg., ch. 204, § 4.06

(d) An election made under Subsection (e) shall be made by any defendant filing a written
election before the issues of the action are submitted to the trier of fact and when made, shall
be binding on all defendants. If no defendant makes this election or if conflicting elections
are made, all defendants are considered to have elected Subsection (c)(1).

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., 1st C.S., ch. 2,
§ 2.08, eff. Sept. 2, 1987; Acts 1995, 74th Leg., ch. 136, § 1, eff. Sept. 1, 1995; Acts 2003, 78th Leg., ch.
204, §§ 4.06, 4.10(4), eff. Sept. 1, 2003.

## Historical and Statutory Notes

**2003 Legislation**

Acts 2003, 78th Leg., ch. 204 rewrote subsec. (b),
repealed former subsec. (c), and added new sub-
secs. (c) and (d). Former subsecs. (b) and (c) read:

"(b) If the claimant has settled with one or more
persons, the court shall further reduce the amount
of damages to be recovered by the claimant with
respect to a cause of action by a credit equal to one
of the following, as elected in accordance with
Section 33.014:

"(1) the sum of the dollar amounts of all set-
tlements; or

"(2) a dollar amount equal to the sum of the
following percentages of damages found by the
trier of fact:

"(A) 5 percent of those damages up to
$200,000;

"(B) 10 percent of those damages from
$200,001 to $400,000;

"(C) 15 percent of those damages from
$400,001 to $500,000; and

"(D) 20 percent of those damages greater
than $500,000.

"(c) The amount of damages recoverable by the
claimant may only be reduced once by the credit
provided for in Subsection (b)."

Section 23.02(c) of Acts 2003, 78th Leg., ch. 204
provides:

"(c) Articles 4, 5, and 8 of this Act apply to an
action filed on or after July 1, 2003. An action
filed before July 1, 2003, is governed by the law in
effect immediately before the change in law made
by Articles 4, 5, and 8, and that law is continued in
effect for that purpose."

## Law Review and Journal Commentaries

Annual survey of Texas law:
Texas civil procedure. A. Erin Dwyer, Don-
ald Colleluori, and Gary D. Eisenstat, 52
SMU L.Rev. 1485 (1999).

Medical Malpractice Death Actions: Understand-
ing Caps, Stowers, and Credits, Mark D. Clore,
J.D., 41 S.Tex.L.Rev. 498 (2000).

## Research References

**ALR Library**

71 ALR 4th 1108, Comparative Fault: Calcula-
tion Of Net Recovery By Applying Percentage
Of Plaintiff's Fault Before Or After Subtract-
ing Amount Of Settlement By Less Than All
Joint Tortfeasors.

78 ALR 3rd 339, Modern Development Of Com-
parative Negligence Doctrine Having Applica-
bility To Negligence Actions Generally.

**Encyclopedias**

TX Jur. 3d Contribution & Indemnification § 35,
Attorney Fees; Interest.

TX Jur. 3d Contribution & Indemnification § 36,
In General.

TX Jur. 3d Negligence § 71, Determination Of
Percentage Of Responsibility; Right To, And
Amount Of, Damages.

TX Jur. 3d Tort Liability § 17, Amount Of Re-
covery; Reduction Of Claimant's Damages.

ION CODE
    Title 7

nine (9)
id motor

r on the

5. Article
after the
ng to the
lealed by
15.409(a).
cles, was
:d in this
aw reads:

s, one of
ed twenty

, whether
:d portion
s possible
d or main
:rson park
upon any
ifteen feet
t standing
r unless a
:et in each

ie Depart-
on of the
vehicle or
vehicle to

# CHAPTER 546. OPERATION OF AUTHORIZED EMERGENCY VEHICLES AND CERTAIN OTHER VEHICLES

## SUBCHAPTER A. AUTHORIZED EMERGENCY VEHICLES

| Section | |
|---|---|
| 546.001. | Permissible Conduct. |
| 546.002. | When Conduct Permissible. |
| 546.003. | Audible or Visual Signals Required. |
| 546.004. | Exceptions to Signal Requirement. |
| 546.005. | Duty of Care. |

[Sections 546.006 to 546.020 reserved for expansion]

## SUBCHAPTER B. OPERATION OF CERTAIN FIRE–FIGHTING EQUIPMENT

| | |
|---|---|
| 546.021. | Mutual Aid Organizations. |

## SUBCHAPTER A. AUTHORIZED EMERGENCY VEHICLES

### § 546.001. Permissible Conduct

In operating an authorized emergency vehicle the operator may:

(1) park or stand, irrespective of another provision of this subtitle;

(2) proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation;

(3) exceed a maximum speed limit, except as provided by an ordinance adopted under Section 545.365, as long as the operator does not endanger life or property; and

(4) disregard a regulation governing the direction of movement or turning in specified directions.

Acts 1995, 74th Leg., ch. 165, § 1, eff. Sept. 1, 1995.

### Revisor's Note

The revised law refers to an ordinance adopted under Section 545.365 (Art. 6701d, Sec. 172) of this code. This reference is added for completeness because Section 545.365 authorizes a municipality to regulate by ordinance the speed of certain authorized emergency vehicles.

### Historical and Statutory Notes

Prior Laws:
Acts 1947, 50th Leg., p. 967, ch. 421.

Acts 1971, 62nd Leg., p. 723, ch. 83.
Vernon's Ann.Civ.St. art. 6701d, § 24(b), (c).

### American Law Reports

Liability of operator of ambulance service for personal injuries to person being transported, 68 A.L.R.4th 14.



## § 546.002. When Conduct Permissible

Section 546.001 applies only when the operator is:

(1) responding to an emergency call;

(2) pursuing an actual or suspected violator of the law; or

(3) responding to but not returning from a fire alarm.

Acts 1995, 74th Leg., ch. 165, § 1, eff. Sept. 1, 1995.

### Historical and Statutory Notes

**Prior Laws:**
Acts 1947, 50th Leg., p. 967, ch. 421.

Acts 1971, 62nd Leg., p. 723, ch. 83.
Vernon's Ann.Civ.St. art. 6701d, § 24(b).

### Notes of Decisions

In general   1

**1. In general**

In ambulance passengers' action against owner of ambulance which collided at intersection with automobile, physical facts demonstrated that driver of ambulance failed to comply with § 24(b) of this article requiring him upon approaching a red signal light to slow down as necessary for safety and to proceed cautiously



03, Negligent
le.

past such light. Rollin v. Condra Funeral Home (Civ.App. 1959) 321 S.W.2d 108. Genuine issue of material fact as to whether police officers acted in good faith in pursuing suspect precluded summary judgment in favor of police officers in wrongful death and survival

action brought by survivors of motorist who was killed when suspect's car collided with his during high speed chase. Huddleston v. Maurry (App. 5 Dist. 1992) 841 S.W.2d 24, writ dismissed w.o.j., rehearing of writ of error overruled.

g police cars
ten feet of
material fact
ity of care to
ig summary
i motorcycle
l. Chambers
t. 1992) 843
t granted, af-
i S.W.2d 650,

## § 546.003. Audible or Visual Signals Required

Except as provided by Section 546.004, the operator of an authorized emergency vehicle engaging in conduct permitted by Section 546.001 shall use, at the discretion of the operator in accordance with policies of the department or the local government that employs the operator, audible or visual signals that meet the pertinent requirements of Sections 547.305 and 547.702.

Acts 1995, 74th Leg., ch. 165, § 1, eff. Sept. 1, 1995.

cers' involve-
t motorcycle
officers were
ing in motor-
ing summary
injury action;
's wreck may
ers' failure to
iger's safety,
driver's high-
ulting loss of
seeable result
s v. City of
S.W.2d 143,
rmed in part,
0, rehearing

### Revisor's Note

(1) Section 24(d)(1), V.A.C.S. Article 6701d, refers to "exemptions granted under Subsections (b) and (c)." The revised law places all privileges or exemptions in Section 546.001 of this code. Section 546.002 of this code specifies when an operator may engage in conduct permitted by Section 546.001 of this code.

(2) Section 24(d)(1), V.A.C.S. Article 6701d, refers to "audible or visual signals meeting the requirements of Section 124." The pertinent parts of Section 124 are revised in Sections 547.305 and 547.702 of this code, and the revised law is drafted accordingly.

### Historical and Statutory Notes

**Prior Laws:**
Acts 1947, 50th Leg., p. 967, ch. 421.
Acts 1981, 67th Leg., p. 3074, ch. 810, § 1.
Acts 1987, 70th Leg., ch. 344, § 1.

Acts 1991, 72nd Leg., ch. 673, § 1.
Acts 1991, 72nd Leg., ch. 667, § 1.
Vernon's Ann.Civ.St. art. 6701d, § 24(d)(1).

### Notes of Decisions

In general 1

**1. In general**

In action against city for wrongful death of fireman who died when unmarked police car traveling at high rate of speed without display of warning lights or sounding of signal or radio

communication to fire truck or police car that other vehicle was in area, was driven into side of fire truck, there was no evidence which would demonstrate duty on part of city to give an audible warning or signal to one emergency vehicle concerning whereabouts of other emergency vehicles operating within area. Jones v. City of Dallas (Civ.App. 1970) 451 S.W.2d 271, ref. n.r.e..

83.
§ 24(b).

## § 546.004. Exceptions to Signal Requirement

(a) A volunteer fire fighter who operates a private vehicle as an authorized emergency vehicle may engage in conduct permitted by Section 546.001 only when the fire fighter is using visual signals meeting the pertinent requirements of Sections 547.305 and 547.702.

lemonstrated
comply with
im upon ap-
ow down as
ed cautiously

203, Negligent
icle.

ing police cars
to ten feet of
of material fact
duty of care to
ling summary
en motorcycle
ed. Chambers
ist. 1992) 843
rit granted, af-
83 S.W.2d 650,

fficers' involve-
ith motorcycle
officers were
ılting in motor-
ıding summary
l injury action;
le's wreck may
icers' failure to
senger's safety,
e driver's high-
esulting loss of
eseeable result
ers v. City of
43 S.W.2d 143,
ffirmed in part,
650, rehearing

h. 83,
1, § 24(b).

demonstrated
to comply with
him upon ap-
slow down as
eed cautiously

ast; such light. Rollin v. Condra Funeral Home (Civ.App. 1959) 321 S.W.2d 108.

Genuine issue of material fact as to whether police officers acted in good faith in pursuing suspect precluded summary judgment in favor of police officers in wrongful death and survival

action brought by survivors of motorist who was killed when suspect's car collided with his during high speed chase. Huddleston v. Maurry (App. 5 Dist. 1992) 841 S.W.2d 24, writ dismissed w.o.j., rehearing of writ of error overruled.

## § 546.003.  Audible or Visual Signals Required

Except as provided by Section 546.004, the operator of an authorized emergency vehicle engaging in conduct permitted by Section 546.001 shall use, at the discretion of the operator in accordance with policies of the department or the local government that employs the operator, audible or visual signals that meet the pertinent requirements of Sections 547.305 and 547.702.

Acts 1995, 74th Leg., ch. 165, § 1, eff. Sept. 1, 1995.

### Revisor's Note

(1) Section 24(d)(1), V.A.C.S. Article 6701d, refers to "exemptions granted under Subsections (b) and (c)." The revised law places all privileges or exemptions in Section 546.001 of this code. Section 546.002 of this code specifies when an operator may engage in conduct permitted by Section 546.001 of this code.

(2) Section 24(d)(1), V.A.C.S. Article 6701d, refers to "audible or visual signals meeting the requirements of Section 124." The pertinent parts of Section 124 are revised in Sections 547.305 and 547.702 of this code, and the revised law is drafted accordingly.

### Historical and Statutory Notes

**Prior Laws:**
Acts 1947, 50th Leg., p. 967, ch. 421.
Acts 1981, 67th Leg., p. 3074, ch. 810, § 1.
Acts 1987, 70th Leg., ch. 344, § 1.

Acts 1991, 72nd Leg., ch. 673, § 1.
Acts 1991, 72nd Leg., ch. 667, § 1.
Vernon's Ann.Civ.St. art. 6701d, § 24(d)(1).

### Notes of Decisions

In general 1

1. In general

In action against city for wrongful death of fireman who died when unmarked police car traveling at high rate of speed without display of warning lights or sounding of signal or radio

communication to fire truck or police car that other vehicle was in area, was driven into side of fire truck, there was no evidence which would demonstrate duty on part of city to give an audible warning or signal to one emergency vehicle concerning whereabouts of other emergency vehicles operating within area. Jones v. City of Dallas (Civ.App. 1970) 451 S.W.2d 271, ref. n.r.e..

## § 546.004.  Exceptions to Signal Requirement

(a) A volunteer fire fighter who operates a private vehicle as an authorized emergency vehicle may engage in conduct permitted by Section 546.001 only when the fire fighter is using visual signals meeting the pertinent requirements of Sections 547.305 and 547.702.

(b) An authorized emergency vehicle that is operated as a police vehicle is not required to be equipped with or display a red light visible from the front of the vehicle.

(c) A police officer may operate an authorized emergency vehicle for a law enforcement purpose without using the audible or visual signals required by Section 546.003 if the officer is:

(1) responding to an emergency call or pursuing a suspected violator of the law with probable cause to believe that:

(A) knowledge of the presence of the officer will cause the suspect to:

(i) destroy or lose evidence of a suspected felony;

(ii) end a suspected continuing felony before the officer has obtained sufficient evidence to establish grounds for arrest; or

(iii) evade apprehension or identification of the suspect or the suspect's vehicle; or

(B) because of traffic conditions on a multilaned roadway, vehicles moving in response to the audible or visual signals may:

(i) increase the potential for a collision; or

(ii) unreasonably extend the duration of the pursuit; or

(2) complying with a written regulation relating to the use of audible or visible signals adopted by the local government that employs the officer or by the department.

Acts 1995, 74th Leg., ch. 165, § 1, eff. Sept. 1, 1995.

### Revisor's Note

(1) Section 24(d–2), V.A.C.S. Article 6701d, refers to "exemptions granted by Subsection (b)." The revised law substitutes a reference to Section 546.001 for the reason stated in Revisor's Note (1) to Section 546.003 of this code.

(2) Section 24(d–2), V.A.C.S. Article 6701d, refers to "the 'standards of Section 124." The pertinent parts of Section 124 are revised in Sections 547.305 and 547.702 of this code, and the revised law is drafted accordingly.

### Historical and Statutory Notes

**Prior Laws:**
Acts 1947, 50th Leg., p. 967, ch. 421.
Acts 1981, 67th Leg., p. 3074, ch. 810, § 1.
Acts 1987, 70th Leg., ch. 344, § 1.

Acts 1991, 72nd Leg., ch. 667, §§ 1, 2.
Acts 1991, 72nd Leg., ch. 673, § 1.
Vernon's Ann.Civ.St. art. 6701d, § 24(d)(1),
(2), (d–2).

## § 546.005.  Duty of Care

This chapter does not relieve the operator of an authorized emergency vehicle from:

(1) the duty to operate the vehicle with appropriate regard for the safety of all persons; or

(2) the consequences of reckless disregard for the safety of others.

Acts 1995, 74th Leg., ch. 165, § 1, eff. Sept. 1, 1995.

(b) An authorized emergency vehicle that is operated as a police vehicle is not required to be equipped with or display a red light visible from the front of the vehicle.

(c) A police officer may operate an authorized emergency vehicle for a law enforcement purpose without using the audible or visual signals required by Section 546.003 if the officer is:

(1) responding to an emergency call or pursuing a suspected violator of the law with probable cause to believe that:

(A) knowledge of the presence of the officer will cause the suspect to:

(i) destroy or lose evidence of a suspected felony;

(ii) end a suspected continuing felony before the officer has obtained sufficient evidence to establish grounds for arrest; or

(iii) evade apprehension or identification of the suspect or the suspect's vehicle; or

(B) because of traffic conditions on a multilaned roadway, vehicles moving in response to the audible or visual signals may:

(i) increase the potential for a collision; or

(ii) unreasonably extend the duration of the pursuit; or

(2) complying with a written regulation relating to the use of audible or visible signals adopted by the local government that employs the officer or by the department.

Acts 1995, 74th Leg., ch. 165, § 1, eff. Sept. 1, 1995.

### Revisor's Note

(1) Section 24(d–2), V.A.C.S. Article 6701d, refers to "exemptions granted by Subsection (b)." The revised law substitutes a reference to Section 546.001 for the reason stated in Revisor's Note (1) to Section 546.003 of this code.

(2) Section 24(d–2), V.A.C.S. Article 6701d, refers to "the standards of Section 124." The pertinent parts of Section 124 are revised in Sections 547.305 and 547.702 of this code, and the revised law is drafted accordingly.

### Historical and Statutory Notes

| Prior Laws: | |
|---|---|
| Acts 1947, 50th Leg., p. 967, ch. 421. | Acts 1991, 72nd Leg., ch. 667, §§ 1, 2. |
| Acts 1981, 67th Leg., p. 3074, ch. 810, § 1. | Acts 1991, 72nd Leg., ch. 673, § 1. |
| Acts 1987, 70th Leg., ch. 344, § 1. | Vernon's Ann.Civ.St. art. 6701d, § 24(d)(1), (2), (d–2). |

## § 546.005.  Duty of Care

This chapter does not relieve the operator of an authorized emergency vehicle from:

(1) the duty to operate the vehicle with appropriate regard for the safety of all persons; or

(2) the consequences of reckless disregard for the safety of others.

Acts 1995, 74th Leg., ch. 165, § 1, eff. Sept. 1, 1995.

1  INCREASING THE PROBABILITY THAT YOU MAY RUN INTO SOMEBODY?

2  A.    YES, SIR.

3  Q.    BECAUSE WHEN YOU'RE OVER THE SPEED LIMIT THE BRAKING

4  DISTANCE THAT IT TAKES TO BRING YOUR CAR TO A STOP IS

5  INCREASED, CORRECT?

6  A.    YES.

7  Q.    IT'S INCREASED A LOT, ISN'T IT?

8  A.    YES.

9  Q.    SO THAT'S GOING TO MEAN THAT THE PROBABILITY OF AN

10  ACCIDENT IS GREATER, CORRECT?

11  A.    YES, SIR.

12  Q.    AND THE SEVERITY OF THE ACCIDENT, IF YOU HAVE ONE, IS

13  GOING TO BE GREATER, RIGHT?

14  A.    YES, SIR.

15  Q.    SO IT'S REALLY -- IT'S HAZARDOUS AND DANGEROUS TO EXCEED

16  THE SPEED LIMIT, CORRECT?

17  A.    YES.

18  Q.    AND YOU AS A TROOPER -- AND I'M SURE YOU'RE A GOOD

19  TROOPER, IF YOU'RE GOING TO EXCEED THE SPEED LIMIT, WHICH IS

20  DANGEROUS, YOU WANT TO MAKE SURE THAT YOU'VE GOT LIGHTS AND

21  FLASHERS ON TO WARN MOTORISTS THAT YOU'RE COMING, TO GET OUT OF

22  THE WAY, RIGHT?

23  A.    YES, SIR.

24  Q.    AND WE KNOW THAT ON THE NIGHT OF THIS ACCIDENT RANGER

25  DUFF WAS IN AN UNMARKED CAR, RIGHT?

1    Q.    YOU DON'T SEE THAT AS A CONFLICT OF INTEREST?

2    A.    THAT DOESN'T HAVE ANY AFFECT ON MY OPINION OF THE

3    ACCIDENT.

4    Q.    DO YOU HAVE A -- DID YOU HAVE A TERRITORY BACK IN MARCH

5    OF 2004?

6    A.    YES.

7    Q.    AND THAT TERRITORY WAS -- COVERED POLK COUNTY?

8    A.    YES, SIR.

9    Q.    LIVINGSTON?

10   A.    YES, SIR.

11   Q.    AND YOU WERE FAMILIAR WITH THIS AREA WHERE THE ACCIDENT

12   OCCURRED?

13   A.    YES, SIR.

14   Q.    AND HAD YOU INVESTIGATED ACCIDENTS IN THAT AREA BEFORE?

15   A.    YES.

16   Q.    MORE THAN ONE?

17   A.    YES.

18   Q.    DID YOU CONSIDER IT TO BE A DANGEROUS AREA?

19   A.    YES.

20   Q.    WHY IS IT A DANGEROUS AREA?

21   A.    IT'S A DANGEROUS AREA BECAUSE OF THE POSITIONING OF THE

22   TRUCK STOP.

23   Q.    OKAY.  IS IT ALSO DANGEROUS BECAUSE YOU'VE GOT -- AND

24   YOU'VE GOT A MOBIL STATION HERE, CORRECT?

25   A.    YES.

1   Q.     YOU'VE GOT A TRUCK STOP HERE, RIGHT?

2   A.     YES.

3   Q.     YOU'VE GOT AN EXXON STATION/CONVENIENCE STORE, CORRECT?

4   A.     YES.

5   Q.     AND THEN YOU'VE GOT A RESTAURANT?

6   A.     RIGHT.

7   Q.     AND YOU HAVE FIVE CROSSOVERS, RIGHT?

8   A.     YES.

9   Q.     FIVE PRIVATE DRIVEWAYS?

10  A.     I'M NOT SURE ON THAT, BUT...

11  Q.     AND THE VERY NATURE OF THESE BUSINESSES BEING GAS

12  STATIONS AND CONVENIENCE STORES ARE SUCH THAT PEOPLE ARE GOING

13  TO BE PULLING IN AND OUT ALL THE TIME?

14  A.     YES.

15  Q.     ALL TIMES OF THE DAY?

16  A.     YES, SIR.

17  Q.     SO IT'S AN AREA WHERE YOU WANT TO BE PARTICULARLY

18  CAUTIOUS WHEN YOU ARE APPROACHING IT?

19  A.     YES, SIR.

20  Q.     ESPECIALLY AT NIGHT?

21  A.     RIGHT.

22  Q.     AND ALSO AS YOU GET UP -- AND IT DOESN'T SHOW IT ON

23  HERE, BUT AS YOU GO IN THIS DIRECTION YOU'RE COMING UP A HILL,

24  AREN'T YOU?

25  A.     A SLIGHT HILL, YES.

1  Q.     AND THAT'S ANOTHER REASON WHY YOU WANT TO SLOW DOWN AS

2  YOU APPROACH THAT AREA?

3  A.     RIGHT.

4  Q.     AND YOU CERTAINLY DON'T WANT TO APPROACH THAT AREA AT

5  100 MILES AN HOUR, DO YOU?

6  A.     DEPENDS.

7  Q.     WELL, I JUST WANT TO ASK YOU IS IT SAFE?  DO YOU THINK

8  IT'S A SAFE IDEA AT NIGHT TO APPROACH THAT AREA GOING 100 MILES

9  AN HOUR?

10 A.     UNDER WHAT CONDITIONS?

11 Q.     UNDER ANY CONDITIONS?

12 A.     I DO IT ALL THE TIME, I HAVE TO.

13 Q.     YOU HAVE YOUR LIGHTS AND FLASHERS ON?

14 A.     RIGHT.

15 Q.     OKAY.  BUT I'M SAYING IF YOU'RE IN AN UNMARKED CAR WITH

16 NO LIGHTS AND NO FLASHERS, IS IT A SAFE THING TO DO TO APPROACH

17 THAT AREA AT 100 MILES AN HOUR?

18 A.     NO.

19 Q.     IS IT SAFE AT 93 MILES AN HOUR?

20 A.     NO.

21 Q.     WHY?  WHY IS IT UNSAFE?

22 A.     YOU DON'T EVER KNOW WHO OR WHAT'S GOING TO COME OUT OF

23 THAT PARKING LOT.

24 Q.     WELL, IT'S NOT FAIR TO THE PEOPLE COMING OUT OF THE

25 PARKING LOT, IS IT?

1    DIDN'T USE THE SKID MARKS TO TRY TO DETERMINE THE SPEEDS OF

2    RANGER DUFF'S VEHICLE?

3    A.      THAT'S RIGHT.

4    Q.      IT SOUNDS TO ME, TROOPER LEE, THAT WHAT YOU DID IS YOU

5    TOOK A BUNCH OF MEASUREMENTS AND DIDN'T DO ANYTHING WITH THEM,

6    CORRECT?

7    A.      SURE.

8    Q.      YOU TOOK A BUNCH OF MEASUREMENTS, BUT YOU STOPPED THERE.

9    YOU DIDN'T DO THE MATHEMATICAL CALCULATIONS TO COME TO ANY

10   ACTUAL NUMBERS ON WHAT HAPPENED.

11   A.      RIGHT.

12   Q.      DO YOU THINK THAT POLICE OFFICERS HAVE AN OBLIGATION TO

13   OBEY THE SPEED LAW?

14   A.      YES, I DO.

15   Q.      SO RANGER DUFF HAD AN OBLIGATION TO OBEY THE

16   65-MILE-AN-HOUR SPEED LAW IN THAT LOCATION?

17   A.      YES.

18   Q.      IF HE VIOLATED THAT LAW IS THAT SOMETHING THAT CAUSED

19   THIS ACCIDENT?

20   A.      IT'S A CONTRIBUTING FACTOR, YES.

21   Q.      OKAY.  YOU ADMIT THAT.  DOES IT MATTER HOW MUCH HE

22   VIOLATED THE SPEED LIMIT?

23   A.      NO.

24   Q.      IF HE WAS GOING AT LEAST 93 MILES AN HOUR WHEN HE FIRST

25   TOUCHED HIS BRAKE PEDDLE, WOULD THAT BE A VIOLATION OF THE LAW?

1  A.    YES.

2  Q.    BUT YOU NEVER TOOK THOSE MEASUREMENTS AND APPLIED THE

3  FORMULAS THAT YOU LEARNED IN LEVEL 5, TO REACH ANY CONCLUSIONS,

4  CORRECT?

5  A.    RIGHT.

6  Q.    OKAY.  AND I BELIEVE YOU ALSO TESTIFIED THAT AT THE TIME

7  OF THIS ACCIDENT YOU DIDN'T KNOW WHAT RANGER DUFF'S SPEED WAS

8  IMMEDIATELY BEFORE THE ACCIDENT?

9  A.    NO, SIR.

10  Q.    AND YOU'VE ADMITTED TODAY THAT HE HAD AN OBLIGATION TO

11  OBEY THE SPEED LIMIT OF 65?

12  A.    YES.

13  Q.    AND IF HE WAS GOING 93 TO 100-MILES-AN-HOUR BEFORE THIS

14  ACCIDENT, HE WAS VIOLATING THAT LAW?

15  A.    YES.

16  Q.    AND THAT WAS A CONTRIBUTING CAUSE OF THIS ACCIDENT?

17  A.    YES, SIR.

18  Q.    AND YOU ALSO MENTIONED SOMETHING ABOUT PEOPLE LIKE MR.

19  PEER AND MYRTIE LINDSEY THAT ARE SITTING HERE AND THEY'RE

20  LOOKING DOWN THE ROAD TO SEE IF IT'S SAFE TO CROSS, AND YOU

21  SAID THAT -- ABOUT SEEING HEADLIGHTS IN THE DISTANCE, YOU

22  REMEMBER THAT TESTIMONY?

23  A.    YES.

24  Q.    AND ISN'T IT TRUE THAT IN A SITUATION LIKE THAT WHERE

25  SOMEBODY IS SITTING, SITTING HERE AND THEY WANT TO MAKE A TURN

1      SO GETTING BACK TO MY ORIGINAL QUESTION.  IF WHEN MR.

2  PEER LOOKED BACK HERE HE THOUGHT HE SAW HEADLIGHTS A MILE,

3  MILE-AND-A-HALF AWAY AND THEY WERE REALLY CLOSER BECAUSE RANGER

4  DUFF IS GOING 100 MILES-AN-HOUR, THEN HE WAS MISLED, CORRECT?

5  A.    OKAY.  YES.

6  Q.    OKAY.  ALL RIGHT.  AND THAT'S CONSISTENT WITH MR. PEER'S

7  DEPOSITION TESTIMONY THAT WE JUST LOOKED AT, CORRECT?

8  A.      I HAVE TO TAKE YOUR WORD FOR IT, SIR.

9  Q.    WELL, NO, IT IS.  I MEAN, THE PARTIES AGREE ON THAT.  I

10  MEAN, IT'S HIS DEPOSITION.

11  A.    OKAY.

12  Q.    OKAY.  NOW, LET'S TALK ABOUT THE RULES FOR EMERGENCY

13  VEHICLES.  AND I THINK THIS IS THE PART OF THE CODE YOU JUST

14  LOOKED AT.

15      OKAY.  THIS SAYS THAT AN OPERATOR OF AN AUTHORIZED

16  EMERGENCY VEHICLE MAY DO CERTAIN THINGS, CORRECT?

17  A.    RIGHT.

18  Q.    AND TO START WITH, YOU DON'T KNOW WHETHER OR NOT RANGER

19  DUFF, WITHOUT A SIREN, WITHOUT FLASHING LIGHTS, IN AN UNMARKED

20  CAR IS AN AUTHORIZED EMERGENCY VEHICLE, CORRECT?

21  A.    NO, SIR, NOT WITHOUT LOOKING AT THE STATUTE.

22  Q.    BUT EVEN ASSUMING THAT HE WAS, HE CAN EXCEED THE MAXIMUM

23  SPEED LIMIT AS LONG AS THE OPERATOR DOES NOT ENDANGER LIFE OR

24  PROPERTY, CORRECT?

25  A.    RIGHT.

1   Q.      SO THIS JUST ISN'T A BLANKET TO SPEED.  I MEAN, YOU CAN

2   ONLY DO IT, EVEN IF YOU ARE AN EMERGENCY VEHICLE, AS LONG AS

3   IT'S CONSISTENT WITH NOT ENDANGERING LIFE AND PROPERTY,

4   CORRECT?

5   A.      RIGHT.

6   Q.      BOTTOM LINE BEING, YOU CAN DO IT BUT IT STILL HAS TO BE

7   SAFE?

8   A.      RIGHT.

9   Q.      AND I THINK YOU TESTIFIED EARLIER THAT YOU DIDN'T FEEL

10  THAT GOING 100 MILES-AN-HOUR IN THIS AREA WITH THE HEAVY

11  TRAFFIC AND ACCIDENTS IS SAFE, IS IT?

12  A.      NO.

13  Q.      SO IF 100 MILES-AN-HOUR ISN'T SAFE IN THIS AREA, IT

14  DOESN'T MATTER WHETHER OR NOT HE WAS AN EMERGENCY VEHICLE, DOES

15  IT?

16  A.      NOPE.

17  Q.      BECAUSE IT STILL HAS TO BE SAFE.  BOTTOM LINE IS, YOU'VE

18  GOT TO DRIVE SAFE?

19  A.      RIGHT.

20  Q.      OKAY.  AND THEN THE SAME STATUTE, THERE'S A DUTY OF

21  CARE.  THIS IS AT THE END OF THE STATUTE, "DUTY OF CARE."  AND

22  WHAT THIS SAYS IS THAT THE EMERGENCY REGULATIONS DO NOT RELIEVE

23  AN OPERATOR OF AN AUTHORIZED EMERGENCY VEHICLE FROM THE DUTY TO

24  OPERATE THE VEHICLE WITH APPROPRIATE REGARD FOR THE SAFETY OF

25  ALL PERSONS, CORRECT?

```
 1   A.      RIGHT.

 2   Q.      SO THE SAFETY OF ALL PERSONS, THAT'S NUMBER ONE, RIGHT?

 3   A.      RIGHT.

 4   Q.      IT DOESN'T MATTER IF YOU'RE AN EMERGENCY VEHICLE OR NOT,

 5   CORRECT?

 6   A.      CORRECT.

 7   Q.      AND ALL PERSONS INCLUDES WERNER ENTERPRISES, RIGHT?

 8   A.      RIGHT.

 9   Q.      AND IT INCLUDES MR. PEER?

10   A.      RIGHT.

11   Q.      AND THIS IS -- THIS IS STATE LAW, CORRECT?

12   A.      YES.

13   Q.      THIS APPLIES TO -- IT APPLIES TO ME, IT APPLIES TO YOU,

14   IT APPLIES TO RANGER DUFF, RIGHT?

15   A.      RIGHT.

16   Q.      AND, MA'AM, IF -- EVEN IF RANGER DUFF IS ON EMERGENCY

17   CALL, IF 100 MILES-AN-HOUR IN THIS AREA IS UNSAFE, THEN HE

18   VIOLATED THAT LAW, DIDN'T HE?

19   A.      YES.

20           MR. FROCK:  I WILL PASS THE WITNESS.

21           THE COURT:  MR. TERRELL, ANYTHING ELSE?

22           MR. TERRELL:  YES, JUST A COUPLE.

23           THE COURT:  CONFINE IT TO THE RECROSS-EXAMINATION.

24                       REDIRECT EXAMINATION

25   BY MR. TERRELL:
```

```
 1   Q.      AND WHAT IS THAT OPINION?

 2   A.      THE ACCIDENT.

 3   Q.      AND PARTICULARLY WHAT FROM THE ACCIDENT?

 4   A.      THE INJURY TO HIS NECK.

 5   Q.      THE -- THE COMPRESSION FRACTURE?

 6   A.      YES.

 7   Q.      ALL RIGHT.   NOW, REGARDING COST IN 2005 DOLLARS,

 8   DOCTOR, AS AN ORTHOPEDIC SPINE SURGEON AND -- AND AS A FACULTY

 9   MEMBER OF U.T. AND -- AND ON THE STAFF HERMANN, ARE YOU

10   FAMILIAR WITH THE GENERAL COSTS, INCLUDING SURGICAL FEES,

11   HOSPITAL STAY AND ANESTHESIOLOGY OF AN ANTERIOR CERVICAL

12   FUSION?

13   A.      YES.

14   Q.      IN TODAY'S DOLLARS, DR. KUSHWAHA, HOW MUCH IS THAT?

15   A.      IT'S ABOUT $40,000.

16   Q.      OKAY.  AND ABOUT HOW MANY MONTHS OFF WORK?

17   A.      FOR HIM TO GO BACK FULL DUTY, HE'LL BE OFF WORK FOUR

18   MONTHS.

19              (END OF PLAINTIFF'S PORTION OF THE VIDEO)

20              MR. WASHBURN:  PASS THE WITNESS, JUDGE.

21      (WHEREUPON THE DEFENDANTS' PORTION OF THE VIDEO WAS PLAYED)

22   Q.      AND DID MR. DUFF GO TO PHYSICAL THERAPY?

23   A.      YES.

24   Q.      DID HE COMPLETE PHYSICAL THERAPY?

25   A.      YES.
```

1   Q.     I MEAN, PAIN IS A VERY SUBJECTIVE THING. SOME PEOPLE

2   ARE IN TERRIBLE PAIN AND IT JUST ALL OF A SUDDEN STOPS, IS THAT

3   CORRECT?

4   A.     SOMETIMES THAT HAPPENS.

5   Q.     AND -- AND SOMETIMES IT GETS BETTER?

6   A.     YES.

7   Q.     BUT -- BUT YOU DON'T KNOW THAT ONE WAY OR THE OTHER?

8   A.     NO.

9   Q.     AND YOU'RE CERTAINLY OPEN TO THE IDEA THAT HE COULD GET

10   BETTER?

11   A.     I GUESS THERE'S A POSSIBILITY OF THAT.

12   Q.     AND I BELIEVE YOU SAID THAT THE -- THAT YOU BELIEVE IN

13   REASONABLE MEDICAL PROBABILITY THAT IF HE HAS THE SURGERY HE

14   CAN BE BACK TO WORK IN FOUR MONTHS?

15   A.     YES.

16   Q.     AND THAT MEANS BACK TO WORK IN WHAT HE'S DOING NOW AS A

17   TEXAS RANGER?

18   A.     YES.

19   Q.     AND WITH A LOT LESS PAIN?

20   A.     I THINK SO. OBVIOUSLY, THAT'S NOT A -- YOU KNOW,

21   THERE'S NO GUARANTEE FOR IT. OBVIOUSLY, IF HE HAD A

22   COMPLICATION OR HAD A PROBLEM HEALING, HE MAY NEVER GO BACK TO

23   WORK; BUT THAT'S MY EXPECTATION.

24   Q.     WELL, DOCTOR, WOULD YOU DO THE SURGERY IF YOU DIDN'T

25   BELIEVE THAT HE WOULD GET SIGNIFICANT RELIEF?

## CERTIFICATE OF SERVICE

I, M. David Frock, hereby certify that on, June 9, 2006, two copies of the foregoing BRIEF FOR APPELLANT (along with an electronic version of this brief), and two copies of the RECORD EXCERPTS, and the original OFFICIAL RECORD in this case were sent to Jack Washburn, by hand delivery; and two copies of the foregoing BRIEF FOR APPELLANT (along with an electronic version of this brief) and two copies of the RECORD EXCERPTS were sent to Bryan Adam Terrell, by certified mail, rrr to the addresses shown below:

Jack Washburn
Murphey & Washburn
820 Gessner, Suite 1560
Houston, Texas 77024
(713) 827-0505
(713) 827-0560-fax
State Bar No. 20837010

Bryan Adam Terrell
Weller Green Toups & Terrell LLP
2615 Calder
Suite 400
Beaumont, Texas 77704
(409) 838-0101
(409) 838-6780-fax

M. David Frock